**DAVID BERG AND COMPANY, Appellant,**

v.

**David RAVKIND et al., Appellees.**

**No. 16.**

Court of Civil Appeals of Texas.

Tyler.

Jan. 30, 1964.

Rehearing Denied Feb. 20, 1964.

Bill C. Hunter and Gerald R. Coplin, Passman, Jones, Stewart, Andrews & Hunter, Dallas, for appellant.

Joseph M. Stuhl, Wise & Stuhl, Dallas, for appellees.

DUNAGAN, Chief Justice.

This is a suit upon a demand promissory note. David Berg and Company, as plaintiff, brought suit against David Ravkind,

Shirley Ravkind, and Max Blasser upon a demand promissory note dated July 25, 1960, in the original principal sum of $17,000.00. Plaintiff sought judgment against the defendants, jointly and severally, for the full amount of such note, interest from July 13, 1961, and attorney's fees as provided by said note. Trial upon the merits before a jury and upon special issues resulted in a verdict that payments totalling $11,450.00 had been made by defendants upon said note. Judgment was rendered in plaintiff's favor and against defendants, jointly and severally, for the sum of $5,550.00 principal, interest thereon at ten percent (10%) per annum from and after July 13, 1961 until paid, attorney's fees in the amount of $555.-00, and all costs of suit.

Appellant's Motion for Instructed Verdict and for Judgment Non Obstante Veredicto, were overruled by the Trial Court. Appellant's Amended Motion for New Trial was overruled on March 12, 1963, at which time the appellant gave notice of appeal. Appellant having perfected his appeal, the case is now before this court.

The appellant was a supplier of meat. The appellees, Dave Ravkind and wife Shirley Ravkind, operated a restaurant located at 8414 Preston Road in Dallas under the name of "Dudy's Restaurant". This restaurant was formerly operated by Phil Miller. In February, 1960, the Ravkinds became associated as partners in this restaurant with Phil Miller. At the time of establishing this partnership, Phil Miller and wife Sarah Miller, and Dave Ravkind and wife Shirley Ravkind, executed a note in favor of David Berg and Company dated February 1, 1960, in the sum of $48,282.22, payable in weekly installments of $200.00, beginning on February 8, 1960, with a like installment to be paid on or before each Monday thereafter until said note was fully paid. This note was given in renewal and extension of the unpaid balance then due and owing on a note in the original principal sum of $32,500.00, executed by the Millers to Kosher Zion Sausage Company, secured by a chattel mortgage. This note and

chattel mortgage was assigned by Kosher to David Berg and Company by an assignment dated January 15, 1960. The balance of the $48,282.22 note was for the unpaid balance then due and owing on certain accounts owed to David Berg and Company.

The Ravkinds became sole operators of this restaurant in July, 1960, having acquired the Millers' interest therein. On July 25, 1960, the Ravkinds executed a note in the sum of $42,927.05 as makers, and the Millers as accommodation co-makers, to David Berg and Company. This note was payable in weekly installments of $200.00 each, beginning July 25, 1960, with a like installment due and payable on or before every Monday thereafter until said note was fully paid. This note contained the following provision:

"This Note is given in renewal and extension of and continues to be secured by those liens securing one certain promissory note dated February 1st, 1960, made, executed and delivered by the Makers thereof to the Payee hereof in the original principal sum of $48,282.22, payable in weekly installments of $200.00, which said Note was given in renewal and extension of the unpaid balance then due and owing on that one certain note in the original principal sum of $32,500.00, dated September 4th, 1956, executed by Philip P. Miller and wife, Sarah Miller, payable to the order of Kosher Zion Sausage Company of Chicago, secured by Chattel Mortgage of even date therewith executed by said Philip P. Miller et ux. to Kosher Zion Sausage Co. of Chicago, and filed for record in the Chattel Mortgage Records of Dallas County, Texas, and which note and Chattel Mortgage were assigned by said Kosher Zion Sausage Co. of Chicago to David Berg & Company by an Assignment dated January 15th, 1960; and in further renewal and extension of the unpaid balance then due and owing on certain accounts then owned by DAVID BERG & COMPANY."

Also, on July 25, 1960, Dave Ravkind and wife Shirley Ravkind, and Max Blasser executed a demand note in favor of David Berg and Company in the sum of $17,000.00 containing the following provision:

"In part, this note is given in renewal and extension of one certain promissory note of Phil's, Inc. and Philip P. Miller and Sarah Miller, Individually, dated December 24th, 1948, in the original principal sum of $6,000.00, payable to the Payee hereof, in weekly installments of $25.00 each, which obligation, as partial consideration for a purchase and sale transaction between Phil's, Inc. and the Makers hereof, has been and is by the execution hereof assumed by the Makers hereof; the unpaid balance of said note now being the sum of $5,800.00; and a further consideration for this Note is the sum of $7,200.00 in cash by the Payee hereof paid unto the Makers hereof coincidentally with the execution and delivery of this Note; and the remaining consideration for this Note is the assignment by the Payee hereof to Dave Ravkind and Shirley Ravkind, two of the Makers hereof, without recourse on the Payee hereof, of one certain promissory note in the original principal sum of $4,-000.00, dated December 24th, 1958, given by Phil's, Inc. as Maker to the Payee hereof, payable in weekly installments of $25.00 each, commencing February 1st, 1960, on which there remains an unpaid principal balance of $4,000.00."

This note did not provide for interest, except the usual provision of 10% on all past due principal and interest. Appellee Blasser is not shown to have owned any interest in the restaurant but signed the note only because the appellant required his signature thereto before the note would be acceptable. Max Blasser is the father of Mrs. Dave Ravkind.

It is without dispute that beginning with July 25, 1960, and thereafter, appellees made installment payments to appellant by depositing payments to appellant's bank account in the Park Cities Bank & Trust Company, Dallas, Texas, in the total sum of $13,900.00. Whether this money or any part thereof was paid on the $17,000.00 note is in dispute. Dave Ravkind and Max Blasser testified that these payments were on the $17,000.00 note. Milton Lefton, Vice President and Assistant Treasurer of David Berg and Company, testified that the payments were made on the $42,927.05 note and were applied to said note.

The case was submitted to the jury on two special issues, which, together with the answers thereto, were as follows:

"SPECIAL ISSUE NO. 1 Do you find from a preponderance of the evidence that any of the defendants, Dave Ravkind, Shirley Ravkind or Max Blasser have at any time made any payments on the $17,000.00 note in question * * * ?

"ANSWER 'Yes' or 'no'.

"ANSWER: Yes

"If you have answered the preceding issue 'yes', then answer the following issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 2 From a preponderance of the evidence what do you find to be the total amount, if any, of payments made by the defendants on the $17,000.00 note in question * * if you have heretofore found that any of the defendants have made any payments on such note?

"Answer in dollars, if any, and cents, if any.

"ANSWER: $11,450.00"

This case was submitted to the jury entirely on the theory of payment—whether or not any payments were made on the note sued upon and if so, how much. The jury's findings were contrary to appellant's contention.

The appellant has assigned thirty points of error, being in substance as follows: (1) That the court erred in refusing to grant Plaintiff's Motion for Instructed Verdict in its entirety and refusing to grant Plaintiff's Motion for Judgment Non Obstante Veredicto because the undisputed and uncontroverted evidence having probative force established that all money received by appellant was applied against the $42,927.05 note; (2) that the evidence was insufficient to raise or support the issues submitted by the court and the answers given thereto by the jury; (3) the court erred in permitting testimony before the jury of statements allegedly made by Milton Lefton to appellees David and Shirley Ravkind contemporaneously with or at the time of the execution of the demand note as being in violation of the parol evidence rule; (4) the Trial Court erred in admitting testimony of appellant David Ravkind relating to statements or representations purportedly made by Milton Lefton contemporaneously with or at the time of the execution of the demand note and the installment note and statements or representations purportedly made by Milton Lefton to David Ravkind prior to or contemporaneously with the execution of the letter agreement as being in violation of the parol evidence rule; (5) that the court erred in admitting testimony of appellee David Ravkind to the effect that the payments he was making would be applied on the demand note under an understanding with Milton Lefton over appellant's obligation that such was an unresponsive answer and a voluntary statement by the witness and the court in refusing to instruct the jury to disregard such testimony upon motion of the appellant; and (6) the Trial Court erred in admitting testimony of appellee Max Blasser to the effect that deposits made to appellant's bank account were being made for the demand note over appellant's objection that same called for a conclusion on the part of the witness.

We will first discuss appellant's contention that the special issues submitted to the jury and the answers of the jury were not supported by competent evidence. It is undisputed that these payments were made to appellant by depositing payments to appellant's bank account and that many of them were made by appellee Max Blasser, who was a signer only on this note which is the basis of this lawsuit.

It is undisputed, and appellant's agent, Mr. Lefton, so testified, that after the execution of the note in question he (Mr. Lefton) had frequent contact with Dave Ravkind concerning the operation of Ravkind's business and the payments on the note.

Mr. Ravkind testified that as a result of his contacts with Mr. Lefton it was Mr. Ravkind's "understanding" that the payments to appellant's bank account were to be applied on the note involved in this lawsuit.

It is important to understand the relationship between appellant's business and that of Mr. Ravkind. Appellant was not simply a disinterested payee on a note; that is, one who has completed his part of the bargain and is completely through with the transaction except for being paid. Appellant was interested in the continued operation of Mr. Ravkind's business as an outlet for appellant's delicatessen products. Further, appellant was interested enough in the business to have supplied equipment and to supervise and control the placing of signs on the exterior of the building.

 Appellant's contention is that any agreements made prior to or contemporaneously with the execution of the note in question are of no probative value because barred by the parol evidence rule. The rule, though broad and sweeping on its face, is often narrow in its application, and is subject to many exceptions. The parol evidence rule does not bar evidence of prior oral agreements concerning the manner in which credits are to be applied on the note. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30; Edens v. Duncan, Tex.Civ. App., 331 S.W.2d 810 (writ dismissed). In

both of these cases appellate courts upheld findings of such oral collateral agreements. In the Hubacek case the court said:

"The collateral agreement in this case is one which might naturally have been made by parties situated as were petitioner and respondent."

It may well be said in this case that the collateral agreement is one which might naturally have been made by parties situated as were appellant and appellees, with the execution, renewal and extension of several notes and the negotiations that would necessarily follow such numerous business transactions between the parties.

In the Edens case the court said:

"The parol evidence rule is not a rule of evidence at all but a rule of substantive law * * *.

* * * * * *

"The general rule is well established that parol evidence is not admissible to vary or contradict the terms of a written instrument but there are many well established exceptions which are as well established as the rule itself. One of these exceptions is that a prior or contemporaneous parol agreement to apply certain credits as payment on a written instrument is enforceable and may be shown by parol. 'Such matters relate to the performance of a contract and do not vary nor contradict it.'" Citing for such holding Dooley v. Gray, Tex.Civ.App., 54 S.W.2d 558.

Our Supreme Court in the case of Hubacek v. Ennis State Bank, supra, cites Dooley v. Gray with approval.

In the case of Dooley, et al v. Gray, Tex.Civ.App., 54 S.W.2d 558, the court held:

"The general rule is elementary that parol evidence is not admissible to vary or contradict the terms of a written instrument, and that such rule applies to bills and notes. But it is likewise well

settled that a parol agreement made at the time of the execution and delivery of a written instrument, or afterwards, to apply certain credits as payment thereon, or to show payments other than those indorsed on the instrument, is enforceable and may be shown by parol. Such matters relate to the performance of the contract, and do not vary nor contradict it."

Thus, it is clear that the rule does not prohibit testimony of oral agreements subsequent to or contemporaneously with the execution of the note, concerning credits to be applied to it.

2 McCormick and Ray, Texas Law of Evidence 515, Sec. 1671:

"But there is nothing in the Parole Evidence Rule which prevents the written transactions from being later modified by the parties by a new agreement, though oral."

Appellee Dave Ravkind testified:

"I always had an oral agreement with Mr. Passman (Plaintiff's attorney), and my lawyer was present at the time, and at the end of the year the seventeen thousand dollar note, that it would be credited, the interest would be marked as paid, as long as I did business with them, and as long as I made my payments to them and in his terms, remained a good little boy, that then they would re-issue a new note."

Appellee Dave Ravkind also testified that he had had "many conversations with Mickey Lefton (appellant's agent)", that it was "my understanding with Mr. Mickey Lefton" that the periodic payments were being made on the $17,000.00 note. We think that the evidence was of probative force and sufficient to support the issues submitted and the jury's answers thereto.

Appellant also complains of the court's action in permitting appellees to inquire about certain representations prior to and

contemporaneously with the execution of the note in question because such violated the parol evidence rule. In disposing of appellant's complaint that the evidence was not sufficient to support the issues and the jury's findings, we have discussed the parol evidence rule because it was an element of the complaint of the insufficiency of the evidence. In discussing this particular complaint, we might state that the record reflects the following:

> "Q MR. PEVEHOUSE: At the time of the alleged making up of the note, did you make any statements to the Ravkinds concerning whether or not demand would be made or would be held up or when demand would be made?

> "MR. HUNTER: Your Honor, the note itself is the best evidence of any particular matter that would concern how the note was to be paid, and we object to the question.

> "THE COURT: He said at the time. It will have to be contemporaneously with the execution of the note. I will overrule the objection if it was made contemporaneously with the execution.

> "MR. HUNTER: Could I also lodge an objection on the basis of the pa

> "THE COURT: That is my ruling. If it is made contemporaneously with the execution of the note, then parole evidence can be received in the record. If it was made prior to the execution of the note, then any statement is merged with the execution. It will have to contemporaneously with, at the same time of the execution of the note."

And subsequent to this, the court again reiterated his ruling during the trial of the case as follows:

> "All the matters that you can go into, are matters that took place contemporaneously and simultaneously with the execution of the instruments, or items

that have taken place since then, which are agreements to alter the instrument."

As far as we can ascertain from the record, the Trial Court adhered strictly to these rulings, if an objection was made based upon this specific ground.

Appellant makes further complaint that the admission of testimony by Dave Ravkind concerning discussions he had with Mr. Lefton about the payments over his objection was error, in that it violated the parol evidence law. The parol evidence rule does not bar testimony of oral agreements which are collateral to the written instrument.

Also, appellant complains about certain testimony of Dave Ravkind over his objection for the reason that the testimony called for a subjective intent of the witness. Such testimony has expressly been held to be admissible. In Reed v. Reed, Tex.Civ. App., 303 S.W.2d 460, reversed on other grounds, 158 Tex. 298, 311 S.W.2d 628, we find the following statement:

> "A party may testify as to his own intentions. His testimony, however, is not conclusive, but it may be considered along with the other evidence in the case."

In Fain v. Texas-Hanover Oil Company, Tex.Civ.App., 354 S.W.2d 949 (writ refused n. r. e.) the court said:

> "One party to an agreement may testify as to his intent when such becomes a material point of inquiry, such evidence is not conclusive."

█ █ The jury heard all the evidence, observed the witnesses and their demeanor as they testified. They are the exclusive judges of the facts proved, the truthfulness and credibility of the witnesses and the weight to be given their testimony. The jury accepted the testimony of the appellees concerning these issues as submitted to them and returned answers thereto in favor of the appellees. The appellate court can-

not substitute its findings for that of the jury. We are bound by their answers in this case. The court has considered each assignment of points of error of appellant and each of them are overruled.

Finding no reversible error in the record, the judgment of the Trial Court is affirmed.