**In re Stephen M. YAMIN.**

**Stephen M. YAMIN**

v.

**CHARTER NATIONAL
BANK-WESTHEIMER.**

**Bankruptcy No. 84–03932–H3–4.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Oct. 16, 1986.

Bro & Short, William A. Short, Jr., Houston, Tex., for Stephen M. Yamin.

Lapin, Totz & Mayer, Larry Huelbig, Edward L. Rothberg, Houston, Tex., for Charter Nat. Bank of Westheimer.

## MEMORANDUM OPINION AND ORDER

EDWARD J. RYAN, Bankruptcy Judge.

On the 9th day of May, 1986, Stephen M. Yamin, a debtor, filed a motion alleging violation of the automatic stay under 11 U.S.C. § 362. The motion seeks contempt sanctions against several officers of Charter National Bank-Westheimer ("Charter Bank"), as well as Charter Bank itself. Debtor Yamin claims that Charter Bank, holding a deed of trust note secured by real estate owned by debtor Yamin and his wife, proceeded with foreclosure of that real estate in violation of Section 362 of the Code.

Charter Bank opposes Yamin's motion and has requested Rule 11 sanctions against counsel for the debtor, claiming that "the allegations contained in the contempt motion are so patently false that Short could not possibly certify that after a reasonable inquiry the allegations were, to the best of his knowledge, information, and belief, well grounded in fact and warranted by existing law."

*Background:*

An involuntary petition under Chapter 7 of the Bankruptcy Code was filed by three petitioning creditors against debtor Stephen M. Yamin on July 27, 1984.

On February 4, 1986, a trial was held on the involuntary complaint, and in due course an order for relief was entered. Yamin was declared to be a debtor.

Prior to the filing of the involuntary petition, Yamin was a restaurateur. In the early 1980's, after his restaurant venture failed, Yamin formed Yamin Oil Supply, Inc. At the time of the formation of Yamin Oil Supply, Inc., Yamin was the president and 100% stockholder of the Yamin Oil Supply, Inc. Debtor continues to be the sole stockholder and president of the company.

Yamin became involved with Charter Bank when Yamin Oil Supply, Inc., decided in the fall of 1981 to build a house on a piece of property it owned in Houston, Texas, on Riverview Way Drive.[1] Record title to the property has been in the name of Yamin Oil Supply, Inc., continuously from the fall of 1981 until May 2, 1986.

During the construction of the house, and prior to its completion in June, 1982, Harold Blackshear and Gary Carter, offi-

---

1. At that trial there was no testimony presented as to the source of the funds Yamin Oil Supply, Inc. used to purchase the Riverview Way property.

cers of Charter Bank, visited and inspected the Riverview Way property. They were informed the debtor and his family were to reside in the home when it was completed, but that it was not to be used as the homestead of the family.

In June, 1982, the Yamin family moved into the house which had been constructed on the Riverview Way property. They continue to reside there.

In the fall of 1982, the owner, Yamin Oil Supply, Inc. decided to encumber the Riverview Way property.

On October 12, 1982, Yamin Oil Supply, Inc., through Yamin, as president, executed and delivered to Charter Bank a promissory note in the original principal sum of $500,000, which note was personally guaranteed by Yamin. It is unclear whether the $500,000 note represented a refinancing arrangement, cash proceeds or both. The $500,000 note was contemporaneously and additionally secured by a deed of trust and security agreement upon the Riverview Way property.

At the time that the deed of trust and security agreement were executed in the name of and on behalf of Yamin Oil Supply, Inc., financial statements were provided to Charter Bank in conjunction with the $500,000.00 note, reflecting that the Riverview Way property was solely owned by Yamin Oil Supply, Inc. Charter Bank relied on this fact.

Charter Bank was later requested by Yamin Oil Supply, Inc. in 1983, to renew and extend the $500,000.00 note and deed of trust. On the 30th day of September, 1983, not only did Charter renew and extend the $500,000.00 note and deed of trust, but also advanced additional funds requested by Yamin Oil Supply, Inc., resulting ultimately in a loan of $1 million dollars. It was this $1 million loan that was eventually foreclosed on by Charter Bank in May 1986.

When Yamin Oil Supply, Inc. applied for the extension and renewal of the note and deed of trust in 1983, Yamin as president of Yamin Oil Supply, Inc. repeated the representations that he had made previously in October, 1982, that the Riverview Way property was solely owned by Yamin Oil Supply, Inc. and that he had no homestead interest in the property.

In 1986, Yamin Oil Supply, Inc., defaulted on the note and the property was noticed for foreclosure on May 6, 1986. Prior to the scheduled foreclosure, Yamin's counsel gave Charter Bank oral and written notice a few days before the foreclosure, that Yamin Oil Supply, Inc. had conveyed legal title to Yamin and Yamin's wife, Mary Ann Yamin, on May 2, 1986. It was at this point that Yamin first notified Charter Bank that he asserted both equitable and legal homestead interests in the Riverview Way property. Despite the foregoing warnings, Charter Bank after careful and serious deliberation and consultation with competent attorneys chose to proceed with the scheduled foreclosure.

As a result of this foreclosure, Yamin has moved for sanctions claiming violation by Charter Bank of Section 362 of the Code.

*Discussion:*

11 U.S.C. Section 362 prohibits creditors from taking collection action against the "property of the estate." "Property of the estate" is defined in 11 U.S.C. § 541 as any and all legal or equitable interests owned by the debtor on the date the bankruptcy petition is filed.

To ascertain whether Charter Bank violated the provisions of 11 U.S.C. Section 362, by foreclosing on the Riverview Way property on May 6, 1986, a determination must be made as to whether Yamin had either an equitable or legal interest in the property as of July 27, 1984.

Federal, not state, law determines whether a debtor may invoke the jurisdiction of the bankruptcy court. *Chase Manhattan Mortgage and Realty Trust v. Bernard Bergman d/b/a Park Crescent Nursing Home,* 585 F.2d 1171 (1977), *citing, Segal v. Rochelle,* 382 U.S. 375, 379–81, 86 S.Ct. 511, 514–15, 15 L.Ed.2d 428 (1966); *Board of Trade of City of Chicago v. Johnson,* 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924); *In re Romano,* 426 F.Supp.

1123 (N.D.Ill.1977). On the other hand, state property law may be relevant to determining whether a particular interest qualifies a debtor as the "legal or equitable owner" of real property within the meaning of § 541(a)(1). As one court has stated, state law "supplies the factual matter concerning the nature of [the debtor's] interests; it delineates ... what rights and obligations an owner of such an interest has." *In Re Romano, supra,* 4265 F.Supp. at 1127.

Yamin and his wife did not obtain legal title to the Riverview Way property until May 2, 1986, just four days before the foreclosure. Obvious is the fact that Yamin did not have legal title to the Riverview Way property on the date the involuntary petition was filed on July 27, 1984.

Debtor, however, claims he has had an equitable interest in and to the Riverview Way property since June, 1982, when he and his family moved onto the property and began residing there. He also claims he entered into a lease agreement containing an option to purchase the Riverview Way property with Yamin Oil Supply, Inc., which gives him an equitable interest in the property. Yamin claims Charter Bank knew or should have known that the property was his "homestead."

While Charter Bank does not dispute that it knew debtor and his family were residing at the Riverview Way property as of June, 1982, Charter Bank disputes that same is Yamin's homestead or that debtor has an equitable interest in the property.

■ Debtor claims that Charter Bank's lien of October 12, 1982, and renewal and extension thereof on September 30, 1983, are void liens against the property inasmuch as it was then and now his homestead. The validity of Charter Bank's deed of trust lien must be determined as of the date Charter Bank's lien was originally created October 12, 1982. *Hayes v. First Trust Joint Stock Land Bank,* 111 S.W.2d 1172, 1177 (Tex.Civ.App.—Fort Worth 1937, writ dismissed).

The State of Texas has extended its protection of homesteads to residences of both single and married persons, protecting these homesteads against mortgages, except for purchase money to buy the property, money to pay for work and materials improving the property, or money to pay taxes upon the property. Tex. Const. Art. XVI § 50.

The initial burden of establishing that property is homestead property is on the claimant of the protection. *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex. 1972); *Lifemark Corp. v. Merritt,* 655 S.W.2d 310 (Tex.Civ.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e. at 314).

In Texas it is well settled that in order to establish homestead rights, a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead must be shown. *Lifemark Corporation v. Merritt, supra* at 314; *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Prince v. North State Bank of Amarillo, supra* at 409.

■ Mere occupancy does not make a property a homestead. *Purdin v. Jenkins,* 337 S.W.2d 418 (Tex.Civ.App.—Dallas, 1960, no writ). Likewise, continued possession of a residence is not in itself sufficient to charge a mortgagee with notice of secret equities in the property. *Union Cent. Life Ins. Co. v. Roach,* 106 S.W.2d 374 (Tex.Civ. App.—Waco 1937, writ dism'd).

■ Yamin established his continuous occupancy of the Riverview Way property from June, 1982 to the present, but *he did not demonstrate the requisite intent to claim the land as his homestead.*

To the contrary, Yamin established he did not want or intend to own legal title or any interest in the property because he did not want his personal creditors to obtain liens against the Riverview Way Property. As he testified, in effect, his intention in taking title to the property in corporate name was to defraud his existing and future personal creditors. Legal title to the Riverview Way property was held for that

purpose in the name of Yamin Oil Supply, Inc. until May 2, 1986.

That Yamin did not intend that the Riverview Way property be his homestead, is fortified by the fact that Yamin executed various documents to that effect. Specifically, Yamin Oil Supply, Inc., through its president, Yamin, executed the deed of trust dated October 12, 1982, which provided in pertinent part, as follows:

"Section 8.4

Mortgagor warrants, covenants and represents that at the time of execution and delivery of this instrument, no part of the Mortgaged Property forms any property owned, used or claimed by Mortgagor, either as a residence or a business homestead, or as otherwise exempt from forced sale under the laws of the State of Texas or the United States. Section 9.3

Debtor [Yamin Oil Supply, Inc.] further warrants and represents to Secured Party that, except for the security interest granted hereby in the Collateral, Debtor is the legal and equitable owner and holder of the Collateral free of any adverse claim and free of any security interest or encumbrance except only those (if any) expressly hereinafter referred to or described ..."

Financial statements submitted in conjunction with the $500,000.00 note and deed of trust and renewal and extension thereof, reflected that the Riverview Way property was solely owned by Yamin Oil Supply, Inc. These representations were made by Yamin and were relied upon by Charter Bank in making the referenced loan.

Yamin made similar representations to at least one third party upon the extension and renewal of the original note and deed of trust.

Steve Vallone, president of National Title Company, testified that Yamin orally assured him that he, Yamin, as an individual, asserted no legal or equitable ownership interest in the Riverview Way property. Vallone further testified that it was in reliance upon said representations that the title company issued a title policy, insuring title in Yamin Oil Supply, Inc. This testimony was not disputed by Yamin.

Yamin as the claimant of the homestead protection was not able to prove that the property was even arguably his homestead until May 2, 1986. Even if Yamin had established the property as his homestead prior to May 2, 1986, he would be estopped to assert such a claim to avoid Charter Bank's deed of trust lien.

Misrepresentations by the homestead claimant may, in proper circumstances, create an estoppel to claim the exemption. *Lincoln v. Bennett,* 138 Tex. 56, 156 S.W.2d 504 (1941); *Savell v. Flint,* 347 S.W.2d 24 (Tex.Civ.App.—Eastland 1961, writ ref n.r.e.). In proper circumstances, a homestead claimant will be estopped to assert secret equities that he fails to disclose to an innocent encumbrancer who deals with the homestead property. *Raney v. Miller,* 51 Tex. 263 (1879).

■ Where a mortgagee takes a lien in good faith reliance upon representations by the mortgagor that the property is not subject to a homestead interest, the mortgagor or its successors are precluded from thereafter asserting a homestead interest in the mortgaged property, *Collier v. Union Central Life Ins. Co.,* 100 F.2d 411 (5th Cir.1938); and *Wehring v. Schumann,* 83 S.W.2d 1112 (Tex.Civ.App.—Galveston 1935, no writ).

■ Assuming that Yamin had established a homestead interest in and to the property, he abandoned it when he executed the deed of trust and security agreement on October 12, 1982, which specifically stated that same was not his homestead. When a party transfers his property into a corporation or permits a corporation to hold title for him, he abandons such homestead interest, even if he continues to occupy that property. The property thereafter becomes subject to the debts of the corporation. *Eckard v. Citizens Nat. Bank in Abilene,* 588 S.W.2d 861 (Tex.Civ.App.—Eastland 1979, writ ref'd. n.r.e.); *Nowlin v. Wm. Cameron & Co.,* 54 S.W.2d 1035 (Tex. Civ.App.—Fort Worth 1932, writ refused);

*Nash v. Conaster,* 410 S.W.2d 512 (Tex.Civ. App.—Dallas 1966, no writ); and *Mayfield v. First State Bank of Holland,* 19 S.W.2d 454 (Tex.Civ.App.—Austin 1929, no writ).

Debtor's attorney, by letter dated July 10, 1986, brought this court's attention to two recent cases, *In re Niland,* 50 B.R. 468 (Bankr.N.D.Tx.1985), and *In re Brokmeyer,* 51 B.R. 704 (Bankr.S.D.Tx.1985), which he felt were controlling.

Both cases are readily distinguishable.

The *Niland* decision did not involve persons claiming homestead property in the name of a third party. While the *Brokmeyer* decision did involve property in the name of a third party, the validity of the lien was not in dispute as the result of false representations made by the homestead claimants as to the character of the property.

■ Alternatively, Yamin asserts an equitable interest in the Riverview Way property as a result of a Lease and Optional Sales Agreement dated October 12, 1982, by and between Yamin, his wife, and Yamin Oil Supply, Inc.[2] That the Lease and Optional Sales Agreement was not present at the title closing held on October 12, 1982, when Yamin on behalf of Yamin Oil Supply, Inc., executed various documents pertaining to the $500,000 Charter Bank loan, nor was Charter Bank ever aware of such a lease. The title company was also not aware of the purported lease agreement. Yamin was, at best, vague as to the lease's origin and authorship, yet the lease mysteriously appeared at trial to support Yamin's position.

It is obvious that the purported lease was drawn up by debtor as a device to "have his cake and eat it too." If personal creditors of the debtor tried to enforce their judgments against him, they would discover that Yamin Oil Supply, Inc. owned the Riverview Way property. Likewise, should creditors of Yamin Oil Supply, Inc. try to enforce judgments against Yamin Oil Supply, Inc., they would learn that Yamin

Oil Supply, Inc. had given a lease with option to buy to the debtor and his wife.

Since the lease was not part of those documents prepared by the title company or Charter Bank for the October 12, 1982 closing; since Yamin does not know its origin or authorship; since upon cross-examination Yamin referred to the lease as a "mistake"; the purported lease, this "ace up the sleeve," cannot be determinative here.

■ Note that Yamin's interest in the Riverview Way property was subject to that of the record title owner, Yamin Oil Supply, Inc. Yamin Oil Supply Co. had superior rights to that of the debtor, and therefore, had the right to place encumbrances upon the property. The lien in question survived the transfer of the property from Yamin Oil Supply, Inc. to Yamin and his wife. Charter Bank's $1 million lien is valid and cannot be attacked by Yamin and his family.

Yamin had no legal or equitable interest, other than actual possession of the property on the date the involuntary insolvency proceeding was filed against him. However, because he was in actual possession of the property on that date, there might have been a technical violation of the automatic stay by the Bank.

Debtor in his motion, requests that Charter Bank and several of its officers be held in civil contempt and be required to pay punitive damages, attorney's fees, and expenses, as a result of their willful, knowingly, and intentional disregard and violation of the automatic stay provisions of the Code.

■ Assuming without deciding that there was a technical violation of the automatic stay by Charter Bank and several of its officers, in view of all the circumstances of the case, there is no doubt that Charter Bank acted in good faith, giving serious consideration to the contentions of the debtor. The bank acted under the advisement of exceptionally competent counsel,

---

**2.** It is noteworthy that although Yamin and his family moved onto the property in June, 1982,

no lease was in effect until October 12, 1982, the same day Charter Bank's lien took effect.

and cannot be deemed to have flouted the spirit and letter of the statute. Debtor is not entitled to damages.

■ Next to be considered is Charter Bank's motion for Rule 11 Sanctions against Yamin.

Although Yamin comes to court with unclean hands, this case is not so extreme as to warrant Rule 11 sanctions.[3]

It is so ordered. Let judgment enter accordingly.

---

3. *See* S.M. Kassin, *An Empirical Study of Rule 11 Sanctions* (Federal Judiciary Center 1985).