E. GRADY JOLLY, Circuit Judge:
W. Steve Smith, trustee of the bankruptcy estate of Shearn Moody, and John S. Greeno, receiver of the Empire Life Insurance Company of America (“Empire Life”), holding the largest claim against the Moody estate, together appeal from the district court’s holdings in two separate cases, first that Moody’s homestead designation of certain property survives fraudulent conveyances he made in anticipation of filing bankruptcy, 77 B.R. 566, and second, that Moody was entitled to a 100-acre homestead exemption under the Texas Property Code as a single person owning rural property. 77 B.R. 580. Because we find that the district court was not clearly erroneous in its factual conclusion that Moody’s homestead property was rural, and did not err as a matter of law in concluding that Moody’s fraudulent conveyances did not void the 100-acre rural-homestead property exemption to which he was entitled, we affirm.
I
The district court said in one of the numerous opinions rendered in this case that this is one of the most bizarre and complicated Chapter 11 bankruptcy proceedings on record. The circumstances are admittedly complicated, and the procedural context is somewhat confusing. We present a much abbreviated version of the pertinent facts.
In 1964 Shearn Moody, Jr., the debtor, bought 575 acres of property on Galveston Island, Texas. Moody’s ranch house on the property is known as 2601 8-Mile Road. In the early 1970s Moody began having financial trouble, and mortgaged the property to his family in order to obtain a family loan. In 1972, Empire Life Insurance Company, owned by Moody, and others filed a securities fraud suit against Moody. From 1972 through 1983, Moody then engaged in mi- *1196 merous complicated real estate transactions in an effort to hide his assets from his creditors.
In January 1973 the Shearn Moody Holding Corporation (“SMHC”) was founded with Moody as its sole stockholder and president. SMHC’s assets primarily consisted of the assets remaining after Empire Life was dissolved. Among the assets transferred to SMHC after Empire’s dissolution were three-fifths of one-eighth life estate interest in the Libby Shearn Moody Trust (“Trust 57”). On August 1, 1973, Moody repaid the balance of his note to his family by borrowing money from National Western Life Insurance Company (“NWLIC”), which was owned by his brother. On that date Moody signed a promissory note in favor of NWLIC in the amount of $923,713.75. In order to secure the loan from NWLIC, Moody mortgaged to NWLIC 565 acres of the Galveston Island property by a deed of trust, keeping 10 acres. SMHC guaranteed the mortgage, and to further secure the loan from NWLIC to Moody, SMHC collaterally assigned to NWLIC a life insurance policy on Moody’s life, a debenture, and one-fifth of one-eighth life estate interest in Trust 57 pursuant to an Agreement and Assignment also dated August 1, 1973.
On December 30, 1976, Empire obtained a multimillion dollar jury verdict in district court. Soon after, on January 24, 1977, Moody conveyed the 565-acre tract to SMHC by an assumption deed. The recited consideration for this 1977 conveyance was the cancellation of all debts owed by Moody to SMHC and SMHC’s payment of all amounts remaining due on the promissory note signed by Moody in favor of NWLIC. On September 7, 1977, SMHC mortgaged the 565 acres for a $6 million line of credit. No funds were ever advanced, but the mortgage technically still remains in place.
On January 4,1979, Moody designated as his homestead 199.56 acres of the original 575-acre tract of land. On May 29, 1979, Empire received final judgment of $6,319,-000 in its securities suit and attempted to execute on the judgment. On June 27 Moody again executed a Designation of Homestead, this time covering 100 acres of the original 575-acre tract, and stating that it was to be effective only if the previous homestead designation were found ineffective. The same 100-acre tract had been included in the January 1979 designation. In early 1980, Moody attempted to encumber the 10-acre tract excepted from the NWLIC mortgage by granting one Mr. Stoker an undivided one-half interest in the tract, and a life estate in the remaining undivided one-half interest.
On March 18, 1982, Moody reconveyed 475 acres to SMHC, excluding the 100 acres designated as homestead on June 27, 1979. This 100 acres included the 10-acre tract reserved in 1977. On March 7, 1983, SMHC conveyed 200 acres to Moody, including most, but not all, of the property described in Moody’s original homestead designation. No consideration was paid for the 1982 or 1983 transactions. On March 25,1983, Moody again designated 200 acres as his homestead, the same 200 acres conveyed by SMHC in March 1983. On the same day, Moody executed a warranty deed on the 200 acres to Shearn Moody, Jr., as Trustee of 2601 8-Mile Road, Galveston, which was recorded on March 29, 1983.
On April 1, 1983, Moody executed a warranty deed conveying to Shearn Moody, Jr., Trustee of 2601 8-Mile Road, Galveston, all oil, gas, or other minerals, or any mineral estate that Moody then owned or might own in Galveston County. Subsequently, on May 13, 1983, Moody executed another warranty deed, conveying all his mineral rights on the 200-acre tract of land designated as his homestead to Shearn Moody, Jr., Trustee.
On June 6, Moody declared Chapter 13 bankruptcy in Texas. The proceeding was dismissed, and in November 1983, Moody filed another Chapter 13 case in North Carolina. This case was converted to Chapter 11, and through change of venue, was sent to Texas. Empire Life and Smith as trustee brought suit against Moody in an effort to recover the 200 or 100 acres designated as Moody’s homestead. The district court concluded that under 11 U.S.C. § 101(48), the 200-acre conveyance by SMHC to *1197 Moody in March 1983 constituted a “transfer,” and under sections 548(a)(1) and (2) of the Bankruptcy Code, the transfer constituted a fraudulent conveyance subject to avoidance. The district court concluded, however, that under Texas homestead law, sanctioned by section 522(b)(2) of the Bankruptcy Code, a homestead designation could immunize the debtor regardless of the debtor’s fraudulent intent in the transaction.
Immediately after deciding this case, the district court conducted a separate trial on the issue of whether Moody’s 200- and 100-acre designation of homestead was proper under Texas law. The district court found that there was no allegation that Moody had originally obtained his property fraudulently in 1964. The court further found that Moody had not abandoned his homestead rights by subsequent transactions. The conveyance from Moody to SMHC of the 565-acre tract of land by assumption deed in 1977 was void for lack of consideration because SMHC had collat-eralized and guaranteed the NWLIC mortgage years before. Therefore, the entire 575-acre property remained in Moody’s ownership and possession following that purported conveyance. The district court found Moody’s 1982 conveyance of 475 acres to SMHC and SMHC’s conveyance back of 200 acres in 1983 similarly void, as obvious sham conveyances without consideration, intended to hide Moody’s assets from his creditors. The district court held that because at all times Moody intended to keep his property as his homestead, he is entitled to his homestead exemption as a matter of right under Texas law. The court then concluded that under the Texas Property Code, as a single person claiming a rural homestead exemption, Moody could designate no more than 100 acres as a homestead site.
II
On appeal, Smith and Empire Life take issue with the district court’s conclusion in the first case that the Texas homestead exemption immunized SMHC’s 1983 conveyance to Moody of 200 acres of land from avoidance under the Bankruptcy Code, regardless of Moody’s fraudulent intent. They argue that even if Texas law does immunize a debtor’s homestead, Moody lost his homestead under Texas law by either alienation or abandonment. The appellants also contend that the district court erred in the second case in holding that the trustee was not entitled to the imposition of an equitable lien on the property. Should they fail in these arguments, the appellants insist that, at the maximum, Moody is entitled to declare only one acre of his land as his homestead because he is a single person, and his property is urban.
On cross-appeal Moody insists that under the Texas Constitution he is properly due a homestead exemption of 200 acres rather than 100 acres, as found by the district court, because the Texas statutory limitation of rural homesteads for single adults, Texas Property Code § 41.022, conflicts with the more expansive provision of the Texas Constitution, article XVI, section 51. We will consider these challenges in order.
A.
Section 548(a)(1) of the Bankruptcy Code permits a creditor or trustee to set aside a transfer of debtor property made within one year of the date of filing of the bankruptcy petition if the debtor made that transfer with actual intent to hinder, delay or defraud a creditor. Section 101(48) of the Bankruptcy Code, 11 U.S.C. § 101(48), defines “transfer” as every method, direct or indirect, of disposing of or parting with property.
Moody’s numerous transactions clearly indicate a fraudulent intent to impair creditors, in violation of sections 548(a) and (b) of the Bankruptcy Code, and Moody’s transfer from SMHC to himself of the 200-acre parcel occurred within one year of the date of his filing the bankruptcy petition. However, section 522(b)(2) of the Bankruptcy Code specifically allows a debtor to retain property which is exempt under state law. And, as Judge Rubin pointed out in In re Reed, 700 F.2d 986, 990 (5th Cir.1983), Texas’ constitutional and statutory protection of the homestead is absolute. *1198 The intent of the debtor is irrelevant to the scope of his homestead exemption under Texas law. Id. at 990-91.
B.
Under Texas law, homestead rights may be lost only through death, abandonment or alienation. Smith and Empire Life attack the district court’s finding of a homestead exemption on the grounds that (1) Moody divested himself of his homestead by conveying portions of his property to SMHC, (2) Moody abandoned his homestead rights in the land through his attempts to convey it, and (3) Moody’s mere possession of the property while legal title Resided in SMHC was not enough to sustain his homestead interest.
(1)
First we turn to consider whether Moody ever extinguished his homestead exemption by alienation of the underlying property. The appellants contend that Moody’s 1977 transfer of property to SMHC by assumption deed was a valid transfer because it was supported by adequate consideration. As consideration for the 1977 transfer, SMHC gave up its right of contribution against Moody as guarantor and servicer of Moody’s debt to NWLIC, involving several hundred thousand dollars, and released Moody from the primary obligation on the NWLIC debt. At trial, though, Moody disavowed that there had been consideration given for the 1977 transfer, and stated that he could not remember the transfer’s purpose.
The record establishes that Moody’s debt to NWLIC had been paid since its inception in 1973 by the one-fifth of one-eighth life estate interest in Trust 57 which SMHC had assigned to NWLIC in 1973 in order to induce NWLIC to make Moody his 1973 loan. That assignment was to be in effect until Moody’s indebtedness was fully paid. In its 1973 Agreement and Assignment, SMHC retained only a right to what remained of that life estate interest once Moody’s indebtedness was fully paid.
Based on our review of the record, and particularly the wording of the 1973 Agreement and Assignment between SMHC and NWLIC, it is evident that, first, SMHC’s transfer of a portion of its life estate interest in Trust 57 to NWLIC was for the valid consideration of NWLIC’s making a loan to Moody, its sole stockholder. Hovas v. O’Brien, 654 S.W.2d 801, 802-03 (Tex. App. 14 Dist.1983) (it is well settled in Texas that consideration may be given either by the promisee or by some other person either to promisor or some other person). Second, it is evident that SMHC did not exact from Moody any collateral agreement to repay or compensate it in any way for assigning that life estate interest to NWLIC to pay for the debt service on the loan. Nor is there any evidence that suggests that SMHC did not act in its own interest when assuming this obligation for its alter ego. In short, SMHC did not acquire any basis or right to proceed against Moody for funds taken by NWLIC out of the life estate interest assigned it for payments on Moody’s note. Thus, when SMHC cancelled all debts owed by Moody in 1977, Moody gained nothing and SMHC gave nothing. Nor did the 1977 transaction that released Moody as primary obligor on the note impose any new obligation on SMHC, because the life estate interest assigned to NWLIC generated more revenue than was necessary to cover the mortgage payments and taxes on the property. Furthermore, NWLIC held ample collateral security to pay off the note in the event of Moody’s death, in the form of a life insurance policy with a face value of $500,000, and a debenture with an original principal sum of $225,000. Thus SMHC assumed no new liability in 1977, and hence paid no consideration for the 1977 Assumption Deed.
The parties do not argue that Moody’s 1982 conveyance to SMHC was supported by valid consideration. The 1982 assumption deed to SMHC itself states that it is made in place of and as a deed of correction for the 1977 deed, which, says the 1982 deed, mistakenly excepted only 10 acres rather than 100 acres. The 1982 deed recites the same consideration as the 1977 deed — the cancellation of all debts owed *1199 SMHC by Moody. For the same reasons stated above with respect to the 1977 deed, we find that Moody’s 1982 conveyance was also unsupported by any real consideration. Thus we agree with the district court’s conclusion that Moody never intended to alienate, and never succeeded in alienating his property either in 1977 or in 1982.
(2)
Next we consider whether Moody ever abandoned his homestead rights in his property through his attempts to convey it.
The appellants argue that abandonment is a factual issue, and use and intent are relevant in determining whether abandonment has occurred. They claim that Moody evidenced his intent to abandon the property by his various paper attempts to convey the land and by his long business and health-related trips away from it, and cite Yamin v. Charter National Bank—Westheimer, 65 B.R. 938 (Bankr.S.D.Tex.1986) for the proposition that a transfer of homestead property to a corporation serves as an abandonment of the homestead, even if the previous legal owner continues to reside on the property.
Yamin is clearly distinguishable. In Yamin, the bankruptcy court found a debtor estopped from claiming homestead rights in mortgaged property because the deed of trust signed on the property explicitly denied him any homestead interest in the residence. Yamin involved a bona fide transfer, rather than a fraudulent conveyance without consideration or intent to relinquish possessory rights as in this case, and turned on detrimental reliance by the mortgagee and estoppel of the mortgagor. No detrimental reliance and estoppel arguments can be offered to bring the MoodySMHC conveyance within Yamin because Moody was at all times also president and sole stockholder of SMHC. In addition, although the mortgagor’s intent in Yamin was apparently to convey, here the district court found that Moody never intended to relinquish his homestead rights. A conveyance of a homestead that is not intended to pass title and that has been simulated to shield the homestead from creditors is void. Hughes v. Parmer, 164 S.W.2d 576, 577 (Tex.Civ.App.—Austin 1942, no writ). A void transfer cannot constitute an abandonment of homestead rights. McGahey v. Ford, 563 S.W.2d 857, 861 (Tex.Civ.App.—Fort Worth 1978, writ ref’d. n.r.e.). Nor do Moody’s absences from the property establish abandonment as a matter of law, provided he acquired no other homestead and no showing is made that he never intended to return to and use the premises as a homestead. Hughes, 164 S.W.2d at 577-78.
Smith and Empire Life also argue that Moody’s 1979-80 conveyances to Mr. Stoker of an undivided half-interest in a ten-acre tract, a right of survivorship in the ten-acre tract, and a life estate in the remaining undivided half of the ten-acre tract left Moody with only a remainder interest in that property, insufficient to support a claim of homestead exemption. They contend that even if no consideration was given for the transfers, a transfer of property designed to defraud creditors passes title to the property and title is defeasible only at the instance of creditors. Therefore, Moody may not avoid the Stoker transfers. They cite Letcher v. Letcher, 421 S.W.2d 162 (Tex.Civ.App.—San Antonio 1967, writ dism’d), and Ransom v. Ransom, 252 S.W.2d 212 (Tex.Civ.App.—Fort Worth 1952, writ ref’d).
Letcher and Ransom do not, however, concern transfers of homestead property. Because creditors have no right of recovery against a debtor’s homestead in the first instance, a conveyance of the homestead cannot be in fraud of their rights as creditors. Hughes, 164 S.W.2d at 577. Once again, a conveyance of homestead property that is not intended to pass title, and that is simulated to shield the homestead from creditors is void. Id. Further, even where a grantor conveys property underlying his homestead by effective deed, if there is no abandonment of the homestead by the grantor occupant, the grantor’s creditors cannot complain that the grantor has extinguished his homestead. Id.
The district court found Moody’s transfers to Stoker, granted for the sole consideration of “love and affection,” to be *1200 shams and nullities intended to protect the property from Moody’s creditors. The evidence showed that Mr. Stoker had lived in an apartment on the property since 1965, and Moody remained in occupancy of the property after the transfers. No changes whatsoever occurred as a result of the Stoker conveyances. Therefore, even if we should assume that the conveyances were valid, Moody still had a possessory interest in the property sufficient to maintain his homestead interest.
Because Moody did not successfully alienate his property by either his 1977 or 1982 conveyances to SMHC, and evidenced no intent to abandon his homestead through either his sham attempts to convey to Mr. Stoker or his business and health-related trips, the district court properly found that he has not foregone his homestead rights in his land.
C.
Smith and Empire Life next argue that the district court erred in concluding that the trustee was not entitled to the imposition of an equitable lien or constructive trust on Moody’s homestead property. But, as the district court noted, Texas courts distinguish between homesteads acquired with fraudulently obtained money and those that are merely augmented or improved with wrongfully acquired funds. Only the former allows for a constructive trust or equitable lien. Bush v. Gaffney, 84 S.W.2d 759 (Tex.Civ.App.—San Antonio 1935 — no writ). Because no evidence suggests that Moody originally acquired the property by fraud in 1964, and because Moody could not “acquire” property from SMHC in 1983 which he had never properly conveyed to SMHC either in 1977 or 1982, Texas law will not allow imposition of an equitable lien. See Curtis Sharp Custom Homes, Inc. v. Glover, 701 S.W.2d 24, 25 (Tex.App.—Dallas—1985 writ n.r.e.).
Ill
We turn now to consider whether the district court erred in finding that Moody’s homestead property was rural, rather than urban within the meaning of the Texas Constitution. If Moody’s property is urban, Moody is entitled to only a one-acre urban homestead. If the property is rural, Moody is entitled to either a one-hundred- or two-hundred-acre homestead exemption, depending on the way the Texas Constitution is read in conjunction with the Texas Property Code.
Whether property is rural or urban is a question of fact, and this court will reverse a district court’s finding of fact only if it is clearly erroneous. On review of the record we find that there was substantial evidence adduced at trial from which the district court could conclude that Moody’s property was rural. Cattle have been located on the property since the 1800s. The property owner to the south of Moody uses the land for cattle grazing and leasing horses. Neither gas nor sewer lines run directly to the property, and much of the property is wetland, difficult to develop for commercial or residential use..
In considering whether the district court erred in concluding that as a matter of law Moody was entitled to only a 100-acre rural-homestead property exemption under the Texas Property Code, we note that Article XVI, section 51 of the Texas Constitution provides:
The homestead not in a town or city, shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of a lot or lots amounting to no more than one acre of land, together with any improvements in the land; provided that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family;
(Emphasis added.) The Texas Property Code, section 41.002 provides:
(a) If used for the purposes of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise enti- *1201 tied to a homestead, shall consist of not more than one acre of land....
(b) If used for the purposes of a rural home, the homestead shall consist of:
(1) for a family, not more than 200 acres....
(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres....
Moody insists that he is entitled to a 200-acre homestead exemption notwithstanding the fact that he is a single adult and his property is rural, because the Texas Constitution trumps the Texas Property Code. He argues that a later constitutional provision should control an earlier legislative enactment, and the constitutional provision was ratified in November 1973, while the statute was signed into law the previous June. For this reason, the inclusion of the homestead exemption in the constitution manifests an intent to safeguard the homestead by putting it beyond the reach of legislators.
The Texas constitutional and statutory provisions need not be read as inconsistent, however. The legislature must have perceived no conflict between the two, because the statute and the constitutional amendment were passed concurrently in May 1973. The statute did not become effective until after the ratification of the constitutional amendment. The Texas Constitution is logically viewed as an enabling act, with the statute as its implementation, focusing on the Constitution’s words “not more than 200 acres.”
The district court regarded Moody’s argument that he was entitled to a 200-acre homestead as an equal protection challenge, but declined to strike down the Texas Property Code provision because it distinguished between married and single people. The court concluded that Moody was entitled to only the single person homestead of 100 acres under the Texas Property Code because “well established principles of judicial restraint militate against federal court intervention in state legislation absent evidence of violations that reach constitutional magnitude.”
The distinction between single adults and heads of families for purposes of the homestead exemption plainly has a rational basis, and the court did not err in refusing to interfere with the explicit provisions of the Texas Property Code, given that there is no direct conflict between those provisions and the Texas Constitution.
IV
The district court did not err in finding that Moody’s homestead rights were never extinguished as a result of the many and varied fraudulent paper conveyances he made in anticipation of bankruptcy. So long as a debtor has no actual intent to abandon his or her homestead rights, conveyances which are otherwise void do not extinguish those rights.
Nor did the district court err in finding that Moody’s land was rural rather than urban and applying the Texas Property Code to limit Moody’s rural homestead exemption to 100 acres. Accordingly, the judgment of the district court is AFFIRMED.