Philip C. McGAHEY, Trustee and Summers Electric, Inc., Appellants,.

v.

Bruce M. FORD et ux., and Southwest Savings Association, Appellees.

No. 17934.

Court of Civil Appeals of Texas, Fort Worth.

March 9, 1978.

Rehearing Denied April 6, 1978.

Nelson & Lewis, Denton, Bagby, McGahey, Ross & DeVore, and Philip C. McGahey, Arlington, for appellants.

Jack Gray, Denton, Biggers, Lloyd, Biggers, Beasley & Amerine, and Arch A. Beasley and Rick W. Hightower, Dallas, for appellees.

OPINION

HUGHES, Justice.

Philip McGahey, Trustee, and Summers Electric, Inc., appeal from a judgment granting a permanent injunction against their foreclosing a deed of trust lien taken to secure pre-existing debts and covering certain real estate which was alleged to be homestead property. Appellants contend that the property was not homestead because record title was in a corporation when they took their deed of trust. Appellees are the subsequent purchasers of the property and their mortgagee. The trial court held that the deed of trust was a void attempt to mortgage homestead property under Tex. Const. art. 16, § 50 because the transfer to the corporation was a pretended sale of the homestead and also void under Article 16, § 50.

We affirm.

Bruce M. Ford and his wife are the owners of a home purchased under a warranty deed executed by Tim P. West, Inc. and Tim P. West and his wife, Carolyn Snow West. The Fords and their mortgagee, Southwest Savings Association, alleged that the Wests had executed an earlier warranty deed on their homestead property to the corporation for the purpose of mortgaging it for debts other than purchase money and improvements on the homestead. Later, both the corporation and West, individually, executed another deed of trust covering the property in favor of Philip C. McGahey, Trustee, for the benefit of Mayfield Building Supply Co., Inc. (a wholly-owned subsidiary of Summers Electric, Inc.). The Fords allege that this deed of trust is a void attempt to mortgage homestead property prohibited by Tex.Const. art. 16, § 50.

The trustee alleged that at the time Mayfield Building Supply received its note and deed of trust the property was not the homestead of the Wests because the legal title was shown by the deed records to be vested in fee simple in the corporation.

The trustee filed a cross-action against Southwest Savings and the Fords, alleging their lien is inferior to Mayfield Building Supply's deed of trust lien and seeking to foreclose. He also joined the Wests and the corporation as third-party defendants, seeking a judgment for $39,718.52 plus interest and attorney's fees.

The trial court granted judgment for the Fords and Southwest Savings, declaring the deed of trust of October 31, 1975, from the corporation and Tim P. West to Mayfield Building Supply invalid. The court removed the deed of trust lien from the record as a cloud on the Fords' title and enjoined the trustee from foreclosing on the property. The court also awarded Mayfield Building Supply a judgment against Mr. West and the corporation for $33,715.38.

The record reflects the following series of events:

1. July 18, 1973—Tim P. West, Inc. purchased the property and became its record owner.

2. March 27, 1974—A warranty deed from the corporation to Mr. and Mrs. West was filed for record, as well as a deed of trust from the Wests to the Irving Savings and Loan Association to finance the building of the house.

3. January 13, 1975—By warranty deed the Wests deeded the property to the corporation, which assumed the $55,000.00 first lien obligation to Irving Savings. The corporation, through Mr. West, as its president executed a second lien deed of trust on the property to Irving Savings, to secure a $25,000.00 loan from Irving Savings to the corporation.

4. March 10, 1975—The warranty deed of January 13, 1975, was filed for record.

5. October 31, 1975—Mr. West, on behalf of himself individually and the corporation, executed a note and deed of trust in favor of Mayfield Building Supply, with Philip C. McGahey as trustee. The note and deed of trust were filed for record on November 12, 1975.

6. May 1976—The Fords purchased the property by warranty deed from the Wests and the corporation. Southwest Savings

Association took a note and deed of trust to secure its loan to the Fords.

## WARRANTY DEED FROM WESTS TO CORPORATION—JANUARY 13, 1975

The court found that the warranty deed contained an assumption of the original $55,000.00 lien and stated further consideration of an additional loan by West, Inc. of $25,000.00. The court further found that contemporaneously with the warranty deed, the corporation executed a note and deed of trust to Irving Savings Association for the additional loan of $25,000.00 to the corporation and that both the warranty deed and deed of trust were filed in the deed records of Denton County, Texas on March 10, 1975. The court also found that the deed was a pretended sale of homestead property for the purpose of mortgaging the homestead for the debts of the corporation.

The court further found that the corporation was in the home building and land development business and that it was wholly-owned by Mr. and Mrs. West, with Mr. West acting as its chief executive officer. There was evidence that after the transfer of the home to the corporation the Wests continued to occupy it as their home but paid no rent. The corporation never demanded possession of the home. West testified the reason he and his wife transferred it to the corporation was to borrow an additional sum of money. The $25,000.00 was used in the business. West also testified that although the corporation assumed the payments on Irving Savings' first lien, both he and the corporation made the monthly payments to Irving Savings. He further testified that Irving Savings let him borrow the money only to enable him to generate the cash to pay off some things and it probably would have been advantageous from a tax point of view because of tax losses in the corporation. But there was also testimony by West that the reason he deeded the property to the corporation was to borrow money on his homestead, and that any tax benefit was only an incidental one.

## NOTE AND DEED OF TRUST IN FAVOR OF MAYFIELD BUILDING SUPPLY EXECUTED BY WEST AND THE CORPORATION—OCTOBER 31, 1975

Cecil W. Mayfield, Mayfield Building Supply's president, testified that West gave them a note representing amounts past due on the corporate account which had accrued prior to the date of the note. They sought security for the note and West suggested his personal home in which he and his family were living at the time although the record title was in the corporation. Mr. West told Mayfield he had put title in the corporation to avoid paying capital gains in the event he sold it because he had a loss carried forward in his operations. Mr. Feddock, Mayfield's credit manager, also testified to this effect. The trial court found that Mayfield Building Supply had knowledge that the Wests were occupying the property as their homestead when it took its deed of trust.

The trial court found that this deed of trust was not given to secure purchase money indebtedness or for improvements to the homestead. The court also found that the consideration for the deed of trust was pre-existing debts owed by the corporation and West, individually, to Mayfield Building Supply. There was also a finding· that Mayfield's attorney searched the title records before the financing arrangements were made between it and the corporation.

West also testified that he gave Mayfield Building Supply the deed of trust to better secure them on the indebtedness he owed them and that Mayfield advanced no money to the corporation or to him personally.

## PURCHASE OF THE PROPERTY BY THE FORDS

The trial court found that the Wests continuously occupied the property as their homestead from March 20, 1974, to May 11, 1976. At the time of the sale to the Fords the first and second liens were paid off from the proceeds of the sale. Releases of those liens were obtained and filed for record. Mayfield Building Supply received no payments on its note and deed of trust.

In point of error no. 1 the trustee contends that the trial court erroneously permitted the Fords and Southwest Savings to make a homestead claim on behalf of the Wests because homestead rights are personal.

The Fords and Southwest argue that they were properly permitted to raise the homestead issue because of the prohibition contained in Tex.Const. art. 16 § 50 which states in part:

No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void.

■ We conclude that the Fords were properly permitted to raise the homestead issue. A void instrument has no effect, even as to persons not parties to it, and its invalidity may be asserted by anyone whose rights are affected. *J. P. Wooten Motor Co. v. First Bank of Swenson*, 281 S.W. 196 (Tex.Comm'n App.1926, jdgmt adopted). Similarly, a purchaser has standing to assert that a judgment lien never attached to homestead property where the homestead had not been abandoned by his vendor. *Hoffman v. Love*, 494 S.W.2d 591 (Tex.Civ. App.—Dallas) *aff'd* on other grounds, 499 S.W.2d 295 (1973).

The cases cited by the trustee are inapplicable. In *Maxey v. Patterson*, 82 S.W.2d 386 (Tex.Civ.App.—Waco 1935, writ dism'd) the court states only that the privilege of occupancy of one who owns no fee interest is personal and does not pass to others by inheritance nor can it be conveyed. In *Walters v. Thompson*, 189 S.W.2d 766 (Tex.Civ. App.—Texarkana 1945, writ ref'd w. o. m.) the original owners permitted a default judgment against them without pleading their homestead rights. Their assignee under an assignment of their share in the proceeds of the sale of the homestead was not permitted to raise the homestead issue.

*Plough v. Moore*, 56 S.W.2d 681 (Tex.Civ. App.—Waco 1933 no writ) stands only for the general proposition that the homestead exemption was then for the benefit of families. *Purdin v. Jenkins*, 337 S.W.2d 418 (Tex.Civ.App.—Dallas 1960, no writ) states that mere occupancy does not make property a homestead. None of the cases cited involve a question of transactions which were alleged to be pretended sales and void under Tex.Const. art. 16 § 50.

■ *Greene v. White*, 137 Tex. 361, 153 S.W.2d 575 (1941) stands only for the proposition that one can have no homestead interest in property in which title has not yet been perfected. The issue before us is whether the Wests had title—and a homestead right—when Mayfield Building Supply took its deed of trust or, as the trustee contends, whether the Wests abandoned any homestead rights they had by the transfer to the corporation. If the transfer to the corporation was void, as the Fords contend, it could not constitute an abandonment.

We will next consider whether the transfer of the home by the Wests to the corporation was void under Tex.Const. art. 16, § 50 thereby rendering the Mayfield deed of trust invalid as well.

Point of error no. 4 is that the trial court "erred in making a finding of fact that the deed from (the Wests) to Tim P. West, Inc. dated January 13, 1975 was a pretended sale of the property in question, the purpose of which was to mortgage the property in question for the debts of Tim P. West, Inc." Point of error no. 5 attacks the court's conclusion of law that this conveyance was a pretended sale of homestead, with the result that *Mayfield Building Supply's* deed of trust was also invalid under Tex.Const. art. 16, § 50.

■ The wording of point no. 4 does not indicate whether it is intended to attack the trial court's finding on the ground of factual or legal insufficiency of the evidence to support the finding. Because their argument is framed in terms of a "no evidence" theory and their prayer for relief is

that we reverse and render judgment in their behalf, we must deem the point as one of legal insufficiency. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 372 (1960). The test used in considering a "no evidence" challenge to the trial court's finding of fact is the same as that for a jury finding, *Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). We must view all the evidence in the light most favorable to the finding and disregard all evidence to the contrary. If there is any evidence to support the finding, we are bound by it. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ There was testimony that the Wests continued to live in the home without paying rent and that the reason the Wests deeded the property to the corporation was to borrow money on the homestead. The deed from the Wests to the corporation recited as consideration the corporation's assumption of the $55,000.00 note and the execution and delivery by the corporation of its note for $25,000.00 to Irving Savings. But West testified that after the transfer both he and the corporation made the monthly payments to Irving Savings.

In *Hardie & Co. v. Campbell*, 63 Tex. 292 (1885) the supreme court emphasized that it is the intention of the parties as to whether or not title is to vest which is important in determining whether a sale is real or pretended. In *Nowlin v. Wm. Cameron & Co.*, 54 S.W.2d 1035 (Tex.Civ.App.—Fort Worth 1932, writ ref'd) it was undisputed that the transfer was intended to be bona fide. Likewise, in *Mayfield v. First State Bank*, 19 S.W.2d 454 (Tex.Civ.App.—Austin 1924, no writ) there was no showing that the transaction was not bona fide and the sale was held to constitute an abandonment of the business homestead. The question of intention is an issue of fact. *Mansfield v. Orange Inv. Co.*, 260 S.W. 307 (Tex.Civ.App.—Beaumont 1924, no writ). We conclude that there was evidence to support the court's finding that the sale was pretended.

The trial court made no finding as to a "condition of defeasance." But the evidence is such that the trial court could have found from the circumstances that the parties intended that the house would be deeded back to the Wests if and when the $25,000.00 second lien was paid off. Under Tex.R.Civ.P. 299 this omitted finding is to be supplied by presumption in support of the judgment.

■ Because the transfer of the property to the corporation was in violation of Tex. Const. art. 16, § 50, the property retained its homestead character and could not be properly mortgaged for any purpose other than purchase money or improvements. We overrule points 4 and 5.

As with point of error no. 4, the wording of point no. 3 does not indicate whether its challenge to the finding of fact is one of factual or legal insufficiency. For the reasons already discussed, we must treat it as one of legal sufficiency, or a "no evidence" point of error.

■ Having already held that the transfer to the corporation did not change the homestead character of the property, we also conclude that the record contains evidence to support the finding of the court that the property was still the homestead of the Wests on October 31, 1975, when Mayfield Building Supply took its deed of trust. The trial court found that the Wests used the property as their homestead from March 20, 1974, through May 11, 1976. The Wests were occupying the property as their homestead on October 31, 1975, and later claimed it in a homestead affidavit executed at the time of the sale to the Fords. We overrule point 3.

In points nos. 2 and 6 the trustee attacks the trial court's conclusion of law that the property was exempt from foreclosure under Mayfield Building Supply's deed of trust and that Mayfield Building Supply was not entitled to the protection of a bona fide mortgagee because it had knowledge or notice of facts giving rise to a homestead claim "and/or" that there was no consideration for the Mayfield deed of trust.

■ Mayfield correctly states that the Wests' continued possession of the home is not in itself sufficient to charge a mortgagee with notice of secret equities in the property. *Union Cent. Life Ins. Co. v. Roach*, 106 S.W.2d 374 (Tex.Civ.App.—Waco 1937, writ dism'd). We need not address the question whether there are any additional circumstances in this case which should have put the trustee on notice.

■ We do not think that Mayfield was entitled to the protection afforded a bona fide mortgagee because the trial court found that there was no consideration for the Mayfield deed of trust except the pre-existing debts. The trustee argues that Mayfield Building Supply is entitled to such protection because the record title was in the corporation. The cases cited by the trustee, however, involve purchasers or mortgagees who gave valuable consideration in reliance on the title records: *Eylar v. Eylar*, 60 Tex. 315 (1883) (purchaser); *National Bond & Mortgage Corporation v. Davis*, 60 S.W.2d 429 (Tex.Comm'n App. 1933, jdgmt adopted) (acquired note and deed of trust for valuable consideration); *First S. & L. Ass'n of El Paso v. Avila*, 538 S.W.2d 846 (Tex.Civ.App.—El Paso 1976, writ ref'd n. r. e.) (deed of trust to secure promissory note); *Still v. Moffett*, 93 S.W.2d 756 (Tex.Civ.App.—Galveston 1936, no writ) (purchaser); *Barron v. Theophilakos*, 13 S.W.2d 739 (Tex.Civ.App.—Beaumont 1929, no writ) (purchaser).

The trustee argues in his brief that the Mayfield deed of trust did have consideration as recited on its face, and that Mayfield gave up causes of action when it took the note and deed of trust. But the trustee has not attacked by point of error the trial court's finding of fact that the consideration for the deed of trust was pre-existing debts, and he is bound by that finding.

■ Cancellation of a pre-existing debt is not such consideration as will support a claim of bona fide purchaser for value without notice as against a claim that the property conveyed is homestead. *Swann v. Rotan State Bank*, 115 Tex. 425, 282 S.W. 789 (1926). Nor does a mortgage taken to secure a pre-existing debt entitle one to the position of a bona fide purchaser for value. "There being no new consideration, should the grantee or mortgagee lose the land or his lien upon it, he still has his debt; and for that reason is held to have parted with nothing of value." *Steffian v. Milmo Nat. Bank*, 69 Tex. 513, 6 S.W. 823 at 824 (1888). Points nos. 2 and 6 are overruled.

All points having been considered and overruled, the judgment is affirmed.