Ethel D. FULLER, Individually and as Unqualified Community Administrator of the Estate of J.B. Fuller, Deceased, Appellants,

v.

PRESTON STATE BANK, James S. Chaffin, and Donald C. McLeaish, Individually and d/b/a Commonwealth Land Title Company of Dallas and Commercial Title and Abstract Company, Appellees.

No. 05–82–00760–CV.

Court of Appeals of Texas, Dallas.

Dec. 28, 1983.

Rehearing Denied Feb. 16, 1984.

Joe D. Gregory, Gregory & Gregory, Dallas, for appellants.

Larry F. Amerine, Dallas, Randall A. Antonson, Duncanville, Tom Wilson, Rick W. Hightower, Dallas, for appellees.

Before GUITTARD, C.J., and STEPHENS and ALLEN, JJ.

GUITTARD, Chief Justice.

This suit concerns the validity of a vendor's deed of trust lien arising from the sale of a homestead. Ethel D. Fuller, individually and as community administratrix of the estate of J.B. Fuller, sued Preston State Bank to cancel the lien. She alleged that the conveyance by her and her late husband to their son and his wife was a simulated transaction made for the purpose of obtaining a loan from the bank and fixing a lien on the homestead, contrary to the prohibition in article XVI, section 50 of the Texas Constitution. She also sought damages from the bank, its loan officer, and a title company attorney under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE §§ 17.41–17.45 (Vernon Supp.1982–1983). The trial court instructed a verdict for all defendants, and plaintiff appeals. We hold that the evidence raises fact issues as to whether the bank had knowledge or notice that the sale was simulated. We also hold that plaintiff was not a "consumer" with respect to the bank within the Deceptive Trade Practices Act and that she was not adversely affected by any alleged deceptive trade practice within the Act. Consequently, we reverse the judgment insofar as it denies the claim for cancellation of the lien and remand that claim for trial, but otherwise we affirm. In view of another trial, we also rule on points complaining of the exclusion of certain evidence.

### 1. *Validity of Lien*

We first consider whether there was sufficient evidence to go to the jury on the validity of the lien. In 1977 J.B. and Ethel Fuller owed more than $22,000 to Preston State Bank and were threatened with bankruptcy. They occupied as their homestead a house in Duncanville. In October of that year they conveyed the property to their son John and his wife Brenda. John and Brenda paid nothing in cash, although the closing papers recite a cash payment of $15,000. They signed a promissory note for $50,000 payable to Preston State Bank and a deed of trust to secure it. The bank credited $22,495.22 of the proceeds to the debt owed by J.B. Fuller, applied $9,482.80 to pay off an existing lien on the property, and paid $12,870 to J.B. Fuller. The record

is not clear as to whether the balance of the $50,000 was actually advanced by the bank.

The closing papers were prepared by the title company attorney, Donald McLeaish. Among the papers signed by John and Brenda Fuller was an affidavit stating that they intended to occupy the property as their principal residence. The evidence shows, however, that they never did so. J.B. and Ethel Fuller continued to occupy it as their home. J.B. Fuller died in November 1977. Ethel continued to occupy the property without any payment of rent, paid all the property taxes, made the monthly payments on the note to the bank, and took the interest paid as deductions on her federal income tax. In December 1978 John and Brenda quitclaimed the property to Ethel.

Ethel Fuller testified that at the closing she made an inquiry of McLeaish as follows:

> I asked him how this, if it was possible in doing this if he [sic] was going to move out of the house and he said, "Don't worry about this. This is the paper only."

Mrs. Fuller interprets this testimony as evidence that she was told that she and her husband would not have to move out of the house because the transaction was "paper only," thus indicating that McLeaish knew the sale to be a pretense.

■ The trial judge excluded testimony of John and Brenda Fuller that they did not intend to purchase the homestead of J.B. and Ethel Fuller, and also excluded the testimony of Ethel Fuller that she did not intend to sell it to John and Brenda. The admissibility of this testimony will be considered later in this opinion. Ethel Fuller contends, however, that even without this testimony the evidence is sufficient to raise a fact issue as to whether the purported sale in October 1977 was a subterfuge for the purpose of obtaining a lien on the property. If so, unless the bank advanced the money without knowledge or notice of the subterfuge, the lien is void. *See Carter v. Converse*, 550 S.W.2d 322, 329 (Tex.Civ.

App.—Tyler 1977, writ ref'd n.r.e.). On the other hand, if the bank advanced the money in reliance on the apparent genuineness of the sale, without knowledge of the subterfuge, and without knowledge of facts that would put a reasonable lender on notice of the circumstance, the lien may be enforced. *Id.* at 329.

■ We conclude that the evidence, though circumstantial, is sufficient to show that the bank's loan officer knew of the subterfuge or had knowledge of facts that would have put a reasonable lender on notice of the subterfuge. Unquestionably the officer, James Chaffin, knew that J.B. Fuller owed the bank more than $22,000. The bank had sued to collect the debt and had sought a receivership, but had been unsuccessful. After threatening to file a bankruptcy proceeding, Chaffin inspected the Fuller residence for the purpose of a loan in the event of a possible sale. Later a loan application was taken from John and Brenda Fuller, although there was never any contact between them and the bank. The first loan application was turned down. Chaffin then made a telephone call to Ethel Fuller advising that her husband needed to come back to the bank for another loan application, and "this time to come to Mr. Chaffin's office." All negotiations were carried on between the bank and J.B. Fuller.

This second loan application was approved even though it revealed that John and Brenda had only $200 at the time. The bank's normal procedure was to verify all information on the application before approving the loan, but in this instance no verifications were received until several days after the loan was approved. Similarly, the contract of sale is dated at least six days after the loan was approved, although normally a loan is not approved until after a contract is received.

Although the loan application shows that John and Brenda Fuller were supposed to make a $15,000 down payment, they testified that they never knew what they were supposed to be paying, and, in fact, paid nothing. Their statement on the applica-

tion that they had only $200 in cash was verified by the bank before it paid out any money. The settlement statement at the closing shows a $15,000 "deposit on earnest money," but also, under "Reduction in Amount Due to Seller," shows a $15,000 "Excess deposit (see instructions)." No explanation of this item is offered.

The escrow instructions do not refer to this $15,000 "reduction," but they do show that John and Brenda were to pay certain expenses normally paid by the purchaser in such a transaction, and affidavits of both sellers and purchasers state that the purchasers have paid these fees. The settlement statement, however, shows that all these fees were paid by J.B. Fuller. Before disbursing its funds, the bank had these papers before it, with all of their inconsistencies.

At the closing a question arose concerning waiver of prepayment penalties after the first year of the loan. McLeaish made a telephone call to Chaffin, then changed the provisions of the note and had the change initialed by J.B. Fuller rather than by John and Brenda Fuller, who signed the note. After the closing, the bank continued to send correspondence to J.B. and Ethel Fuller at the same address.

The bank argues that none of this evidence shows that the bank was involved in the transaction other than as a lender. It insists that there is no evidence that the bank had knowledge of any "pretended sale" between the Fullers and that the bank's lien cannot be destroyed by the secret intentions of the Fullers. The bank points out that there is no evidence of any agreement or conversation between Ethel Fuller and the bank concerning the genuineness of the sale.

■ Although the evidence may be consistent with the theory that J.B. Fuller initiated the scheme and carried it through without the knowledge of the bank, that is not the only reasonable inference. Evidence supporting a contrary inference is necessarily circumstantial because J.B. Fuller's testimony is not available, and neither Ethel nor the younger Fullers partici-

pated in the negotiations. Nevertheless, sale of a homestead by a hard-pressed debtor to a relative who signs a note and lien is itself a circumstance that ought to excite the suspicion of a prudent lender. When this circumstance is considered along with the bank's unsuccessful efforts to collect the debt and the irregularities in the loan as compared with the bank's normal procedures, a reasonable inference may be drawn that the bank's officer knew that the sale was simulated, or, at least, that he had knowledge of facts that would have caused a prudent lender to make further inquiry. Consequently, we hold that an issue of fact was raised that should have gone to the jury.

■ The bank contends that Ethel Fuller is estopped to assert invalidity of the lien in view of her execution of the deed and the other closing documents, including an affidavit stating, "Purchaser is now actually occupying the property ... or in good faith intends to occupy such property as the principal residence." We cannot agree. If the purchaser of a homestead knows or has reason to believe that a purported sale has been simulated for the purpose of fixing a lien on a homestead contrary to the constitutional prohibition, the sale and the lien are void. *Carter v. Converse,* 550 S.W.2d 322, 329 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). A lender is in a similar position. *Anglin v. Cisco Mortgage Loan Co.,* 135 Tex. 188, 141 S.W.2d 935, 940 (1940). The closing papers do not establish as a matter of law that the bank had no reason to believe that the entire transaction was a pretense. Under *Carter* and *Anglin,* knowledge of facts that would cause a prudent lender to make inquiry is equivalent to actual knowledge of the simulated character of the transaction. Consequently, there is at least a fact issue as to whether the bank has established the reliance necessary for estoppel.

The bank attempts to distinguish *Anglin* on the ground that in that case no new funds were advanced by the lender when it took a transfer of vendor's lien notes executed as a part of a simulated sale. The

supreme court expressly held, however, that such a duty of inquiry is imposed on the lender even if it has paid a valuable consideration without actual knowledge of the invalidity of the deed. *Anglin,* 141 S.W.2d at 940. The court treats lack of additional consideration as an alternative ground which invalidates the lien even if the lender has no knowledge or notice. *Id.* at 941. As we understand the reasoning in *Anglin,* when the parties to a simulated sale attempt to fix a lien on a homestead, the lien is invalid if the lender either (1) fails to pay additional consideration or (2) has knowledge or notice that the transaction is simulated. The homestead claimant need not establish both to avoid the lien.

■ The bank further argues that it is not chargeable with notice of invalidity because further inquiry would have revealed nothing. This also is a question of fact. From the evidence previously recited a jury could reasonably draw the inference that if the bank's lending officer had made a reasonable inquiry of Ethel or of John and Brenda, the purported borrowers whom the officer had never seen, he would have learned that the borrowers were not actually making the recited $15,000 down payment and that all parties expected that the elder Fullers would continue to occupy the property and make the payments on the note. Consequently, we hold that the court erred in directing a verdict in favor of the bank with respect to the validity of the lien.

### 2. *Deceptive Trade Practice*

Ethel Fuller contends that the court erred in directing a verdict against her on her deceptive trade practice claim because the bank and its officer, Chaffin, violated section 17.46(b)(12) of the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE (Vernon Supp.1982–83), in that they "represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involves, or which are prohibited by law." The false representation alleged is that the deed of trust signed by John and Brenda created a valid lien on the Fuller homestead. Exactly when or by whom this representation was made is not specified. The same claim is made against attorney McLeaish.

■ We conclude that no deceptive trade practice by the bank is shown. The bank's only connection with the transaction was as a lender and as a creditor attempting to secure its debt. With respect to the bank, therefore, Ethel Fuller was not a "consumer" within the Act because she did not seek or acquire any goods or services from the bank. *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 170 (Tex.1980); *Thompson v. First Austin Co.,* 572 S.W.2d 80, 81–82 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). The present case differs from *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex.1982), which concerned the purchase of a truck by a consumer who claimed to have been misled.

■ With respect to the title attorney, there is no evidence that Ethel Fuller was adversely affected by any representation that the deed of trust created a valid lien. If she had lost the property through foreclosure of an invalid lien, her damages might be substantial. But, as we now hold, no foreclosure can take place if she establishes on another trial that the lien is invalid because of the bank's knowledge of the subterfuge. In that event, the effect of the transaction would be that she has had the benefit of an unsecured loan. If any party is adversely affected by lack of security for the note, it is the bank rather than she. Consequently, the court properly directed a verdict in favor of all defendants on the deceptive trade practice claim.

### 3. *Evidence of Intent*

■ Ethel Fuller complains of the trial court's exclusion of her tendered testimony and also that of John and Brenda concerning their intentions at the time of the apparent sale of the elder Fullers' house. We agree. Although their intent would not invalidate the bank's lien in the absence of knowledge or notice to the bank, it was a necessary element of Ethel's

proof that the apparent sale was only a subterfuge. Generally, a witness may testify concerning his or her own past intentions. *David Berg & Co. v. Ravkind,* 375 S.W.2d 317, 322 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). More particularly, a witness may testify to his or her intent in executing an apparent sale of a homestead. *Browning v. Currie,* 140 S.W. 479, 480 (Tex.Civ.App.—Amarillo 1911, no writ). Consequently, we hold that this evidence is admissible.

### 4. *Evidence of Bank's Minutes*

 Ethel Fuller complains of exclusion of evidence tending to show that the bank destroyed its minutes of a meeting at which the Fuller loan application was considered. In the discovery process, Ethel's counsel requested production of the bank's business records concerning its loan to the Fullers. One of the documents produced by counsel for the bank was a letter from Judith Sinclair, the bank's in-house attorney, to one of the bank's trial counsel. The letter states that the minutes of the meeting at which the bank's loan committee had considered the Fuller loan had been destroyed. The bank asserts that the letter was a privileged communication and that it was included by mistake in the papers produced in response to the request. However, the record before us contains no evidence of mistake or inadvertence. In the absence of such evidence, the privilege was waived. *Eloise Bauer & Associates v. Electronic Realty Associates,* 621 S.W.2d 200, 204 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *see also Bendele v. Tri-County Farmer's Coop,* 635 S.W.2d 459 (Tex.Civ.App.—San Antonio 1982) *modified on other grounds,* 641 S.W.2d 200, 208 (Tex.1982). On another trial this letter will be admissible unless proof of mistake is made.

A further problem is presented by the court's exclusion of Judith Sinclair's testimony that although she was not employed by the bank at the time of the transaction in question, she was the principal contact between the bank and its trial counsel, that she was asked to produce the loan committee meeting minutes for the period that would have included that transaction, and that she found out that these minutes had been destroyed. The bank objected to this testimony on the ground that it was within the attorney-client privilege.

 The admissibility of the testimony depends on whether the privilege was waived by production of the letter. A waiver with respect to the letter would constitute a waiver of the same information given to the bank's in-house attorney. *McClure v. Fall,* 42 S.W.2d 821, 824 (Tex. Civ.App.—Waco 1931, per Alexander, J.) *aff'd,* 67 S.W.2d 231 (Tex.1934); *but see West v. Solito,* 563 S.W.2d 240, 245, n. 3 (Tex.1978).

 The bank argues that neither the letter nor the testimony was relevant to the issues in this case. A party is entitled to show that the opposing party has destroyed documents that would bear on a crucial issue in the case, since the destruction of relevant evidence raises a presumption that the evidence would have been unfavorable to the spoliator. *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1975, writ dism'd). The minutes of the bank's loan committee meeting might well contain evidence bearing on the question of whether the bank knew any facts indicating that the Fuller sale was simulated, particularly since the loan application showed that John and Brenda had only $200, none of the information on the application had been verified, and the loan was originally turned down. Consequently, the court erred in excluding evidence of the destruction of these minutes.

### 5. *Testimony of J.B. Fuller's Initials on Note*

 Ethel Fuller's last complaint is the exclusion of her testimony that she saw her husband initial the promissory note to the bank. The court sustained the bank's objection that insofar as the claim is made in behalf of her husband's estate, her testimony concerned a transaction with the de-

ceased contrary to the Dead Man's Statute, TEX.REV.CIV.STAT.ANN. art. 3716 (Vernon 1926). We need not consider this question because on remand the matter will be governed by rule 601 of the Texas Rules of Evidence (1983).

### 6. *Judgment*

The judgment is reversed and the cause is remanded with respect to Ethel Fuller's claim against the bank for cancellation of the deed of trust lien. In all other respects the judgment is affirmed.