In re Jerry Sidney GIRARD and Wife, Lucy McPherson Girard, Debtors.

Jerry Sidney GIRARD and Lucy McPherson Girard, Plaintiffs,

v.

UNILIFE INSURANCE COMPANY, Defendant.

Bankruptcy No. 88–50015.
Adv. No. 88–5042.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Sept. 5, 1989.

Lawrence A. Beck, Beck & Beck, P.C., San Antonio, Tex., for plaintiffs, Jerry Sidney Girard and Lucy McPherson Girard.

Richard E. Hettinger, Fred R. Jones, Sawtelle, Goode, Davidson & Troilo, San Antonio, Tex., for defendant, Unilife Ins. Co.

## OPINION

RONALD B. KING, Bankruptcy Judge.

The basic issue presented in this adversary proceeding is whether a debtor may convey his homestead to a corporation, direct the corporation to use the property

as collateral for a loan, and then invalidate the conveyance and lien as a sham transaction. The sole purpose of forming the corporation in this case was to avoid Texas constitutional and statutory prohibitions against encumbering a homestead with non-purchase money debt. Upon the filing of bankruptcy, the debtor claimed the realty as exempt property under state law pursuant to section 522(b) of the Bankruptcy Code,[1] and filed this adversary proceeding to invalidate the lien. The lender vigorously argues that the conveyance was a lawful transfer and that the lender acquired a valid lien on the property. Upon review of the record and relevant case law, it appears that the conveyance of the property to the corporation, and therefore, the lender's lien, is valid.

## I.

## FACTS

Jerry and Lucy Girard (the "Debtors") have been living on a 5.14 acre tract in San Antonio, Texas (the "Property") since 1966.[2] There is no dispute that prior to the incorporation of the Girards' construction business, the Property served as their residential homestead, and possibly in a dual capacity, as their business homestead. In 1977, the Girards wished to obtain additional financing for their business. Their lender, Bank of San Antonio ("BOSA"), suggested using the Property as collateral for the loan. BOSA recognized the constitutional prohibition against encumbering a homestead beyond the three (3) prescribed exceptions: (1) purchase money, (2) improvements or (3) ad valorem taxes.[3] In view of these limitations, it was suggested that the five acres be transferred to a corporation, which in turn would negotiate additional financing using the Property as collateral. It is undisputed that the sole purpose for incorporating Girard Construction Company, Inc. (the "Corporation") was to secure additional financing. It should be noted that the Girards continued to live on the Property and that there was virtually no difference between the business of the Corporation and the proprietorship the Girards had been operating from their homestead. No pleadings or evidence questioned the validity of the Corporation or its status as a legal entity separate and distinct from the Debtors.

The result of these transactions was to make the Girards' homestead an asset of the newly formed Corporation. Two years later, in 1979, another loan was negotiated with Unilife Insurance Company ("Unilife"), Defendant herein, secured by a deed of trust lien covering the Property. The Unilife loan paid the remaining indebtedness of the BOSA note, which resulted in

---

1. 11 U.S.C. § 522(b) (1982 & Supp. V 1987). Title 11 is generally referred to herein as the "Bankruptcy Code" or the "Code."

2. There is no dispute that the Property would be subject to the one acre limitation for either a business or residential homestead. As such, only one acre could be "carved out" as exempt. See Tex. Const. art. XVI, § 51 (Vernon Supp. 1989); Tex.Prop.Code Ann. § 41.002(a) (Vernon Supp.1989); Deason v. Continental Savings Ass'n (In re Niland), 825 F.2d 801, 815 (5th Cir.1987). Neither party contends that it is a rural homestead.

3. Article XVI, § 50 of the Texas Constitution provides:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyances of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption.

Tex. Const. art. XVI, § 50 (Vernon Supp.1989).

BOSA granting a release of its deed of trust lien on the Property. Some of the proceeds were used to remodel the home located on the Property. Unilife also made a subsequent loan to the Corporation for the purpose of a proposed subdivision and development of the Property.

## II.

### ISSUES

The essential issue is whether the lien granted by the Corporation to Unilife is valid under Art. XVI, § 50 of the Texas Constitution. Ancillary issues are whether: (1) a homestead may be conveyed to a corporation; (2) the conveyance of the homestead to the Corporation was a "pretended sale"; and (3) Unilife occupied the status of a bona fide purchaser when it obtained its deed of trust lien on the Property.

## III.

### THE PARTIES' CONTENTIONS

### DEBTOR

Jerry Girard testified that it was always his intention to transfer the Property from the Corporation back to himself. He maintained that the sole purpose in creating the Corporation was to satisfy BOSA's concern regarding encumbering the homestead and to secure additional financing for his construction business. Further, Girard claims he was unaware of the prohibition against encumbering homesteads with non-pur-

chase money debt. Moreover, Girard argues that he continued to use the Property as his *residential* homestead after the conveyance to the Corporation and that Unilife failed to make adequate inquiry into his use of the Property.

### UNILIFE

Unilife contends that the conveyance of the Property to the Corporation was a bona fide transaction. Unilife argues that Texas law does not prohibit the conveyance of a homestead to a corporation. Further, the conveyance and BOSA lien on the Property did not constitute a "pretended sale," but rather was a voluntary transaction into which the Debtors entered. In addition, Unilife claims that through various loan officers, Girard was made aware of the relevant homestead statutes and that Girard told Unilife that the five acre tract was no longer his property, but was an asset of the Corporation. Unilife maintains it went to great lengths to ensure that Girard was not using the Property as his homestead.[4] Indeed, record title had been in the Corporation for two years at the time the Unilife lien was created.

Unilife also contends that the Corporation's record title to the Property for two years and BOSA's release of lien made Unilife a bona fide purchaser for value when Unilife extended loans to the Corporation. Additionally, Unilife asserts that a prior agreed order in a dismissed bankruptcy case admitted the validity of Unilife's lien.[5] Alternatively, in the event the

---

4. Wallace Green, the Unilife loan officer involved in negotiating the loans with the Girards, testified that he went to the Property to ascertain whether Girard was using and living on the premises as his residential homestead. *See Moore v. Chamberlain*, 109 Tex. 64, 195 S.W. 1135 (1917). Green stated that he inspected the first floor of the Girards' home, noted it was under construction, concluded it was unsuitable for living, and thus determined the home was no longer being used as a residence. Girard responded that he was remodeling his home and was living *on the second floor*. Consequently, Unilife contends it made sufficient inquiry to determine the use of the home while Girard argues that the inquiry was incomplete.

5. The Girards previously filed a bankruptcy case which was dismissed. In the dismissed case, an

order conditioning stay was agreed to by the same parties. One of the stipulations in the agreed order was the debtor's recognition of the validity of Unilife's first deed of trust lien on the 5.14 acre tract. Unilife argues this stipulation is binding upon the Girards in the present bankruptcy and that the debtors are estopped to contest the validity of Unilife's lien. The effect of this order raises several questions.

First, the Girards dispute the validity of the agreed order, maintaining that their attorney had no authority to enter into the agreed order. If that were the case, the Girards could have directly attacked the order by appeal.

Second, there is some disagreement as to whether an agreed order on a motion for relief from stay can have collateral estoppel effect. It appears that an agreed order regarding a mo-

agreed order is not collateral estoppel as to the validity of the lien, Unilife asserts that the Girards should be estopped to assert a contrary position in the present adversary proceeding.[6]

## IV.

## DISCUSSION

### A. *Status of the homestead.*

■ The constitutional and statutory limitations on encumbering homesteads are inviolable, but the burden of proof is on the homestead claimant. "It is well settled in this state that in order to establish homestead rights, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.). Before property can be claimed as a homestead, the claimant must show that the property was being used for the purposes of a homestead. *Id.* Moreover, the owning, possessing, residing on and using of the property as homestead is sufficient notice that the property is intended as homestead. *Braden Steel Corp. v. McClure,* 603 S.W.2d 288, 293 (Tex.Civ.App.—Amarillo 1980, no writ).[7]

Since the Debtor did not "own" the Property by holding record title at the time of the creation of the Unilife lien, the question must be answered as to whether the Debtor *equitably* owned the Property by virtue of a "pretended sale" to the Corporation in 1977.

### B. *A homestead may be sold or conveyed like other property.*

■ The Texas Constitution prohibits encumbrances on a homestead, with the three exceptions previously noted. There is no prohibition, however, against the outright conveyance of a homestead where such conveyance is made voluntarily, with the appropriate legal formalities and with the intent of passing of title. *Hiner v. Meyer,* 44 S.W.2d 961, 962 (Tex. Comm'n App.1932, judgmt adopted). Thus, a sale of a homestead, evidenced by a proper deed, is effectual to pass title as with any other sale of real property. *Id.*

### C. *Validity of conveying a homestead to a corporation.*

■ In *Mayfield v. First State Bank of Holland,* 19 S.W.2d 454, 455 (Tex.Civ.App. —Austin 1929, no writ), the court held that there is no restriction against "incorporating a business and conveying to the corporation the property on which the business is conducted, even if it constitutes a business homestead and the purpose is to obtain credit by making the business homestead an asset of the corporation." As such, a family is not required by the Constitution to keep a homestead where the family wishes to dispose of it by selling it to a corporation. *Nowlin v. Wm. Cameron & Co.,* 54 S.W.2d 1035, 1036 (Tex.Civ. App.—Fort Worth 1932, writ ref'd).

---

tion for relief from stay may be given collateral estoppel effect only if the parties intended the order to be conclusive as to a particular issue. *See Georgia Granite Co. v. Coggins Granite, Inc. (In re Georgia Granite Co.),* 86 B.R. 733 (Bankr. N.D.Ga.1988).

Third, while an agreed order may be conclusive as to a particular issue, it is questionable whether a stay order could be conclusive as to the validity of liens. A stay motion generally considers only the issue of whether the stay should be lifted or modified. The validity of a lien is appropriately considered in an adversary proceeding. Bankr.R. 7001(2). In light of the holding on the merits of the claim, however, it is unnecessary to reach this issue.

6. In *Hruska v. First State Bank of Deanville,* 747 S.W.2d 783 (Tex.1988), the Supreme Court of

Texas held that a lien upon a homestead cannot be "estopped" into existence. In certain circumstances, however, a homestead claimant may be estopped to deny the validity of an existing lien. *Lincoln v. Bennett,* 138 Tex. 56, 156 S.W.2d 504, 505 (1941). Further, an equitable lien may not be created on a homestead in view of the statutory prohibition contained in Tex. Const. art. XVI, § 50 (Vernon Supp.1989); *Hruska,* 747 S.W.2d at 784–85. Again, it is unnecessary to reach this issue.

7. "Investigation of intention need not be made when the land is actually put to homestead uses. Such actual use of the land is the most satisfactory and convincing evidence of intention." *Youngblood v. Youngblood,* 124 Tex. 184, 76 S.W.2d 759, 761 (1934).

D. *Was the sale of the Girards' homestead a "pretended sale"?*

The ultimate question is whether the Girards' sale of the Property was a "pretended sale" in an attempt to avoid the constitutional proscription against encumbering homesteads. The most recent Texas case which has dealt directly with this issue is *Eckard v. Citizens National Bank in Abilene,* 588 S.W.2d 861 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.).

*Eckard* is factually similar to this case in that the Eckards owned and occupied the homestead prior to the conveyance of their homestead to their solely owned corporation. The only difference is that the Eckards' corporation was incorporated prior to the conveyance of the homestead to the business. Like the Girards, the Eckards' corporation executed a promissory note payable to the bank and secured by a deed of trust on their purported homestead. The corporation also adopted a resolution authorizing the corporation to purchase the property and empowering the officers to negotiate the loan with the bank. *Eckard* at 861–62.

The question before the court in *Eckard* was whether the deed from the Eckards to their solely owned corporation was a "pretended sale." The Eckards argued that the evidence established as a matter of law that the sale to the corporation was a pretended sale, and therefore, void under Article XVI, § 50 of the Texas Constitution. The court in *Eckard* focused its analysis on the intent of the parties, noting that if it was intended that title should vest in the corporation by reason of the conveyance, then such a transaction would amount to a sale. *Eckard* at 862, *citing Hardie & Co. v. Campbell,* 63 Tex. 292 (1885). The testimony of the owner of the corporation, Robert Eckard, acknowledged that it was his intention to sell the property and house to the corporation, whereupon the corporation could then borrow the money and grant a valid lien on the property. Further, the Eckards' attorney who prepared the instruments of conveyance in the transaction corroborated the Eckards' intent. On the basis of the stated evidence, the court concluded that the Eckards failed to establish that the conveyance was a "pretended sale." *Id.*

Another recent case which has considered the issue of an alleged pretended sale of a homestead to a family owned corporation is *Loter v. First National Bank at Lubbock (In re Loter),* 2 Tex. Bankr.Ct.Rptr. 362 (Bankr.N.D.Tex.1988). In *Loter,* the debtors sold their homestead to a family owned corporation and executed an affidavit which stated that they relinquished their homestead claim to the property and that the sale was made in order to obtain the loan from the bank. The debtors continued to occupy the residence. After the bankruptcy case was filed, the debtors filed an adversary proceeding to set aside the bank's lien under the Texas homestead laws because of an alleged pretended sale. In holding the lien valid, Judge Akard stated:

> Whether the sale to the Corporation was a "pretended sale" or a bona fide sale is a question of fact. *Eckard v. Citizens National Bank in Abilene,* 588 S.W.2d 861 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). The evidence in this case established that the sale to the Corporation was clearly a bona fide sale. The Bank, as a good faith lender, had the right to rely on the record title to the property. *First Savings & Loan Association of El Paso v. Avila,* 538 S.W.2d 846 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). *See also Yamin v. Charter National Bank–Westheimer (In re Yamin),* 65 B.R. 938 (Bankr.S.D.Tex.1986); *Mayfield v. First State Bank of Holland,* 19 S.W.2d 454 (Tex.Civ.App.—Austin 1929, no writ) (holding that conveyance of a business homestead to a corporation destroys the homestead claim).
> Because of the Debtors' conduct as set forth herein, they are estopped to claim the Property as homestead. *Brown v. Federal Land Bank of Houston,* 180 S.W.2d 647 (Tex.Civ.App.—Fort Worth 1944, writ ref'd w.o.m.).

*Loter* at 363.

The Court finds that the sale of the Girards' homestead to the Corporation was not

**822**

a pretended sale. The weight of the evidence indicates that the conveyance and sale of the property was a conscious and advised decision on the part of the Girards. The sale was voluntary on their part. The incorporation of the Girards' business was one further step in the conduct of their business. Corporations can be created and used for purposes other than avoidance of homestead laws. No question has been raised as to the validity or separate legal existence of the Corporation. Unilife made serious and sufficient inquiry into the nature and use of the Property. Inspection of the Property would have led most persons to conclude that the premises were devoted to a construction business. Further, Unilife witnesses testified that the Girards told Unilife on several occasions that they had relinquished any homestead claim to the property. In light of the foregoing, the Court is compelled to find that the conveyance was not a pretended sale.[8] Therefore, it is unnecessary to reach the issue as to whether Unilife was a bona fide purchaser for value.

### CONCLUSION

Based upon the evidence and case law discussed in this opinion, this Court holds that the Unilife lien on the 5.14 acre tract of land is valid.[9] This opinion shall constitute the findings of fact and conclusions of law of the Court pursuant to Bankruptcy Rule 7052. A take nothing judgment in favor of Unilife will be rendered contemporaneously herewith.

---

8. *Cf. McGahey v. Ford*, 563 S.W.2d 857 (Tex.Civ. App.—Fort Worth 1978, writ ref'd n.r.e.) (court found sale to corporation a pretended sale on the basis only consideration was for pre-existing debt; intention to vest title in corporation was a question of fact).

9. The validity of the Unilife lien, created by the Corporation in 1979, does not preclude a homestead exemption claimed by the Debtors in their 1988 bankruptcy schedules. The Property has apparently been conveyed by the Corporation to the Debtors. The homestead claim in 1988, if valid, is merely subject to the 1979 lien granted by the Corporation.