**FIRSTBANK, Appellant,**

v.

**Jimmy R. POPE and Janis B. Pope, Appellees.**

**No. 91–CV–960.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 5, 1992.

---

David Lynn James, Keeney, Anderson, Miller, James & Tate, Texarkana, Tex., for appellant.

Stephen Thomas Arnold, Arnold & Arnold, Texarkana, Tex., for appellees.

## MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

SCHELL, District Judge.

CAME ON TO BE CONSIDERED the appeal by FirstBank of the Bankruptcy Court's denial of appellant's lien on Jimmy R. Pope and Janis B. Pope's home. The court, after reviewing the briefs of the parties, the record, and the exhibits, is of

the opinion that the ruling should be AFFIRMED.

## THE SALE

The present dispute centers around the home of Jimmy R. Pope and his wife, Janis B. Pope. The Popes resided in their home together from 1974 until September of 1991, at which time the Popes separated. Mrs. Pope continues to reside in the home. The Popes formed a construction corporation on January 26, 1981, called J.R. Pope and Company, Inc. ("Pope Corporation") and were the sole shareholders. In 1987 the Pope Corporation needed to improve the liquidity of its balance sheet in order to obtain a general contractor's bond. Mr. Pope spoke with Tony Bryant, a loan officer at FirstBank about securing a loan. Mr. Pope suggested using his home to borrow the necessary loan money and was told that it was improper to borrow money on one's homestead. However, Bryant referred Pope to Josh Morris, an attorney, with whom Pope discussed selling his home to the Pope Corporation to obtain the necessary liquidity. Morris prepared a letter to Charles Williams, an employee at United States Fidelity & Guaranty Company, which explained how to transfer a homestead to a corporation and what documents were needed for a real sale as opposed to a "sham" transaction. Appellant's Exhibit 1. However, Williams refused to insure the property because of the potential litigation arising from the homestead character of the property. (R. at 118, ls. 9–17). Thereafter, Morris successfully engaged Charles A. Morgan to render a title opinion on the Pope's property. Appellee's Exhibit 3.

On October 12, 1987, the Popes signed several documents which were prepared by Mr. Morris. These documents were the following:

1. Third Party Deed
2. Deed of Trust
3. Promissory Note
4. Residential Lease Agreement
5. Certificate of Corporate Resolution
6. Real Estate Contract
7. Joint Buyer & Seller Affidavit
8. Waiver of Inspection
9. Affidavit as to Debts and Liens

Appellee's Exhibits 5–13. At the closing, the Popes received $86,292.73 from the sale of the home, and they deposited $72,000.00 of the loan in a certificate of deposit at FirstBank (R. at 37 ln. 10 to p. 38 ln. 19). Although a lease agreement existed, the Popes never made any lease payments to the Pope Corporation (R. at 32 ln. 11 to p. 33 ln. 13), and the Popes, not the corporation, made all payments for homeowners' insurance (R. at 33 ln. 25 to p. 35 ln. 13). The certificate of deposit was kept in the care of FirstBank (R. at 102 ln. 17 to p. 105 ln. 18). Mr. Pope testified that he intended to reconvey the property within two years to avoid the capital gains tax. (R. at 36 ls. 12–17). Mr. Rochelle, executive vice president of FirstBank, admitted that he discussed with the Popes the requirement that the funds be put back into a house within two years to avoid the capital gains tax (R. at 106 ln. 14 to p. 107 ln. 4).

On February 5, 1991, the Popes caused the Pope Corporation to reconvey their residence to them individually (R. at 40, ls. 5–8). Appellees Exhibit 21. Subsequently, the Popes dissolved the corporation and filed for Chapter 7 Bankruptcy. During the bankruptcy proceeding, FirstBank sought to have its liens declared valid, and to be recognized as a secured creditor. The Bankruptcy court declared the liens invalid, and this appeal followed.

## STANDARD OF REVIEW

Appellant's first point of error concerns the decision of the bankruptcy judge in concluding that the liens of FirstBank on certain real property were invalid because they violated the residential homestead rights of the Popes. Appellant also appeals the decision of the bankruptcy judge in allowing the oral testimony of Mr. Pope concerning his intention not to pay rent even though a written lease agreement existed.

Because this court is acting as an appellate court, it must apply the standard that is applied in federal appeals courts. *In re Webb*, 954 F.2d 1102, 1103 & n. 1 (5th

Cir.1992). When reviewing findings of fact, the bankruptcy court's opinion shall not be set aside unless it is clearly erroneous and deference should be given to the bankruptcy judge's opportunity to judge the credibility of the witnesses. *Id.;* Federal Rule of Bankruptcy Procedure 8013. This standard does not allow a district court to weigh the evidence. Instead, the district court must ascertain whether the evidence supports the findings of the bankruptcy judge and determine, after reviewing all the evidence, whether the district court is "left with the definite and firm conviction that a mistake has been committed." *Webb,* 954 F.2d 1102, 1104 (quoting *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

■ The standard of review is different for legal conclusions than it is for findings of fact. Legal conclusions of the bankruptcy court are subject to a *de novo* review. *In re Woehr,* 121 B.R. 743, 745 (N.D.Tex. 1990) (citing *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir. 1986)).

■ The parties to this appeal do not agree on the applicable standard of review. Appellant argues that the proper standard of review is the one for legal conclusions, while appellee claims that the proper standard of review is the one for a findings of fact. To determine if the lien was valid or not, the bankruptcy court had to first decide whether the sale to the corporation was a pretended sale or a real sale. Although appellant argues that this is a legal issue because the court must view the documents and decide if the sale was valid, the issue of a pretended sale is a question of fact. *In re Girard,* 104 B.R. 817, 821 (Bkrtcy.W.D.Tex.1989) ("[w]hether the sale to the Corporation was a 'pretended sale' or a bona fide sale is a question of fact") (quoting *Loter v. First Nat'l Bank at Lubbock (In re Loter)* 2 Tex.Bankr.Ct.Rptr. 362 (Bankr.N.D.Tex.1988). Whether the lien is valid or invalid depends upon the sufficiency of evidence to support the conclusion that a pretended sale took place.

Therefore, this court must apply the "clearly erroneous" standard in determining whether the Popes' sale of their home to the Pope Corporation was a pretended sale and must exercise *de novo* review of the decision allowing the oral testimony of the intent of the Popes to lease the property.

## ANALYSIS

The Texas State Constitution provides in pertinent part:

> The homestead of a family ... shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

Texas Const. art. XVI, § 50. The bankruptcy judge concluded that the Popes had indeed made a pretended sale to the Pope Corporation.

Appellant relies heavily upon *Eckard v. Citizens Nat. Bank,* 588 S.W.2d 861 (Tex. Civ.App.—Eastland 1979, ref. n.r.e.) in which the Eckard's transferred their homestead property to a corporation solely owned by them. The Eckards signed a deed of trust note payable to the bank and the corporation executed a deed of trust covering the property. *Eckard* focused upon the intent of the parties. The evidence revealed that the transaction was intended to be and actually was a real sale. Therefore, the court affirmed the jury finding that the conveyance was not a pretended sale. *Eckard* 588 S.W.2d at 862.

*Eckard* relied on *Hardie & Co. v. Campbell,* 63 Tex. 292 (1885), which held that not every sale of a homestead involving a condition of defeasance is void, and determined

that the intent of the parties was the most significant aspect.

The appellees rely on *In re Rubarts*, 896 F.2d 107 (5th Cir.1990), in which the Rubartses sold their home to their wholly-owned corporation. A deed of trust was executed in favor of First Bank. *Rubarts* held that First Bank's lien was invalid because it violated the homestead exemption. The Rubartses had continuously lived at their home and there was no evidence of abandonment. *Rubarts* 896 F.2d at 110. The court determined through an analysis of previous cases that a lender has a duty of inquiry which must be prosecuted to the extent a prudent man would protect his own rights and the rights of others. *Rubarts* at 112. Furthermore, "[o]nly the *actions* of the homestead claimants will lay sufficient grounds for estoppel; their declarations made orally or in writing are insufficient." *Id.* at 112 (citing *In re Niland*, 825 F.2d 801, 808 (5th Cir.1987)). A lender may also be charged with constructive knowledge of a debtor's scheme to evade the homestead exemption laws. *Id.* at 113.

*Rubarts* distinguished the two cases relied upon by appellant. Unlike the sellers in *Hardie*, the Rubartses always intended to reconvey the property to themselves after obtaining the loan, without the reconveyance even being contingent upon repayment in full. *Id.* at 114. The court found that the facts were different from *Eckard* and more similar to *McGahey v. Ford*, 563 S.W.2d 857 (Tex.Civ.App.—Fort Worth 1978, ref. n.r.e.) where the debtors continued to live in the house without the payment of rent. Therefore, the court held that the lien was invalid and issued the following final warning to lenders:

> In Texas a lender who is aware of the claimant's continued, actual possession of the property bears a heavy burden in its attempt to escape the reach of the state's homestead provisions. The people of Texas, through their constitution, have determined that in circumstances such as those presented here, debtors may enjoy the benefits of the homestead laws even where they employ devices designed to defeat the purposes of those laws. We have no warrant to second-guess that matter of public policy.

*Rubarts* at 115–116.

In *McGahey*, which is similar to the present case, the court held that there were sufficient facts to support a pretended sale, and noted that in *Hardie* the Texas Supreme Court recognized that it is the intention of the parties as to whether or not title is to vest which is significant in determining if a sale is real or pretended. *McGahey* also distinguished several cases which had upheld the liens associated with sales to a corporation. In *Nowlin v. Wm. Cameron & Co.*, 54 S.W.2d 1035 (Tex.Civ.App.—Fort Worth 1932, writ ref'd), although the court found the lien to be valid, it was undisputed that the transfer was intended to be a bona fide sale. In *Mayfield v. First State Bank*, 19 S.W.2d 454 (Tex.Civ.App.—Austin 1929, no writ), the court found the lien to be valid because there was no showing of anything other than a bona fide sale, especially since the facts clearly showed an abandonment of any homestead rights by plaintiffs.

■ Appellant claims that the distinguishing factor of the present case is that a lease agreement existed which did not exist in either *Rubarts* or *McGahey*. Appellant admits that without the lease and affidavit of the Pope's, FirstBank would have had actual and/or constructive knowledge of a pretended sale. Appellant's Brief at 13. Declarations of the homestead claimants orally or in writing are insufficient to fulfill the duty of the prudent lender. *Rubarts* at 112 (citing *Niland* at 808). The lender must investigate the circumstances to determine if there are any affirmative actions indicating an abandonment. *Id.* at 112 (citing *Fuller v. Preston State Bank*, 667 S.W.2d 214, 218 (Tex.Ct.App.—Dallas 1984 ref. n.r.e.) (which held that there was a reasonable inference that the bank officer knew the sale was simulated, or, at least, had knowledge of facts that would have caused a prudent lender to make further inquiry).

*In re Girard, supra,* is another case where a home was transferred to a corpo-

ration with the intent to reconvey the property. The court held that a pretended sale did not take place. *Girard* is distinguishable from the present case because an inspection of the property in *Girard* would have lead a prudent person to conclude that the premises were devoted to a construction business, and the testimony revealed that the Girards had admitted relinquishing homestead rights.

Despite the lease agreement, appellant has not shown that the Popes' homestead rights were abandoned. The appellant may not rely on the lease agreement. Once a homestead is established, it is presumed to continue until it is abandoned, and the party asserting the abandonment has the burden of proof. *In re Bohac*, 117 B.R. 256, 261 (Bkrtcy.W.D.Tex. 1990); *In re Niland*, 825 F.2d 801, 808 (5th Cir.1987). "[A]bandonment requires not only intent to permanently abandon the former homestead, but also overt acts of discontinued use of the property." *Bohac* at 262. In the present case, there has been no evidence that the Popes abandoned their home.

Appellant directs the court's attention to the fact that "the *Eckard* case illustrates that the mere transfer of one's homestead to a corporation is not automatically a pretended sale even if the premises continue to be used by the transferor." Appellant's Brief at 10. Clearly, the bankruptcy court did not automatically deem the transfer a pretended sale. There are ample facts to support such a decision, especially since Firstbank had knowledge of the reason for the sale and had a duty of inquiry to ascertain whether the Pope's property was a homestead. Firstbank was involved in the transaction from its inception and knew of its uncertain nature.

Applying the "clearly erroneous" standard, this court finds that the bankruptcy judge did not err in holding FirstBank's lien invalid. The evidence supports the decision of the bankruptcy judge. Appellant knew that the appellees wanted to borrow money against their residence (R. at 23 ln. 10 to p. 24 ln. 15) and sent Mr. Pope to an attorney to help him accomplish the sale

without violating the homestead laws (R. at 24 ln. 24 to p. 25 ln. 4). The Popes have continuously lived in the home (R. at 16 ln. 8 to p. 17 ln. 19 & p. 47 ls. 10–24) and have continuously paid the homeowner's insurance on the home (R. at 34 ls. 10–13). Furthermore, appellant was fully aware that the Popes intended to reconvey the property within two years so as to avoid any capital gains taxes (R. at 36 ls. 12–17). FirstBank knew that the property was used as a residence (R. at 51 ln. 18 to p. 54 ln. 15). Mr. Morris writes that "[t]he secret to making this proposed transaction a real sale is to make sure that all the aspects of the transaction involve real elements of the normal transaction." Appellant's Exhibit 1. However, including all these document only makes the sale "look" real. What in fact makes a sale real is to have a transaction that is intended as an actual sale.

As the bankruptcy judge stated, all the parties were aware that the purpose was to transfer the property to the corporation to obtain money for a purpose which is invalid according to the homestead exemption. The homestead was never shown to have been abandoned. Although a written lease existed between the Popes and the Pope Corporation, the Popes never actually paid rent on the property and never intended to pay such rent (R. at 33 ls. 2–13).

Therefore, this court cannot conclude that the bankruptcy judge made a clearly erroneous decision. Instead, there is ample evidence to support a pretended sale despite the efforts by the appellant to document the transaction so that it would appear to be a bona fide sale. Appellant's first point of error is OVERRULED.

## TESTIMONY OF INTENT

Appellant's second point of error is that the bankruptcy judge erred in allowing Mr. Pope to testify about his intent not to pay rent, since a written lease agreement existed. Regardless of the admission of Mr. Pope's testimony, appellant could not rely on any declarations of the homestead owners, and appellant has admitted that it solely relied on the declarations of the home-

stead claimants, which did not fulfill its duty of inquiry of a prudent lender.

 Furthermore, a party may testify as to his intent in executing a pretended sale of a homestead. *Fuller* at 220. *Johnson v. Cherry,* 726 S.W.2d 4, 7 (Tex.1987). Appellant's second point of error is OVERRULED.

This court finds that the bankruptcy court did not err in concluding that appellant's lien on the homestead was invalid, nor did the bankruptcy court err in allowing the testimony concerning the Popes' intent not to pay rent to the corporation. The bankruptcy court's decision is AFFIRMED.